663 So.2d 690 (1995)
Marleen M. JUDD, et al.
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
No. 95-CC-1052.
Supreme Court of Louisiana.
November 27, 1995.
*692 Kevin Conrad Schoenberger, New Orleans, for Applicants.
Russell D. Holwadel, Jesse R. Adams, Jr., Adams & Johnson, New Orleans, for Respondents.
Robert L. Roland, Peter T. Dazzio, Baton Rouge, amicus curiae, for Louisiana Hosp. Ass'n.
Leroy Harvard Scott, III, Shreveport, amicus curiae, for CSX Transp. Inc.
Christopher James Bruno, Joseph Michael Bruno, New Orleans, amicus curiae, for Wilbert Bolds.
CALOGERO, Chief Justice.[*]
We granted writs in this case to consider whether blood alcohol test results, as part of a hospital's medical record, should be admitted into evidence by virtue of La.R.S. 13:3714.[1] Prior to trial, the Twenty-Fourth Judicial District Court granted defendants' motion in limine to admit into evidence a blood alcohol test result as part of a medical record, and denied plaintiffs' motion to exclude it. Thereupon, plaintiffs petitioned the court of appeal for supervisory writs, which the court of appeal denied. Thereafter, this Court granted plaintiffs' writ application.
Under the facts of this case and for the reasons set forth below, we affirm the district court. The court correctly decided to admit into evidence plaintiff's blood alcohol test result as part of the medical record of Ochsner Foundation Hospital, certified copy of which R.S. 13:3714 recites "shall be received in evidence ... as prima facie proof of its contents." LA.REV.STAT. § 13:3714.
On December 21, 1991, at approximately 5:30 a.m., plaintiff Marleen M. Judd ("Judd") was on her way home from partying when she lost control of her Ford Taurus and collided with a utility pole on Hickory Avenue in Harahan, Louisiana. Judd admitted in discovery that she had been drinking and was exceeding the posted speed limit at the time of the accident. Shortly thereafter, Judd was taken to Ochsner Foundation Hospital, where a number of tests were performed, including blood alcohol. The test revealed a blood alcohol level of .219 milligram per deciliter.
Initially, Judd and her husband filed suit against the State of Louisiana, Department of Transportation and Development ("DOTD"), Michelin Tire Corporation ("Michelin"), Sears, Roebuck and Company ("Sears"), and Louisiana Power & Light ("LP & L"). Subsequently, LP & L and DOTD settled with the plaintiffs, leaving only Michelin and Sears as defendants. Plaintiffs alleged that defendants Michelin and Sears manufactured a defective tire which caused Judd's automobile accident.
Plaintiffs argue that the lower courts erred in ruling that R.S. 13:3714 applied to blood alcohol test results contained in hospital records. The Louisiana Legislature originally enacted R.S. 13:3714 in 1938,[2] a statute which *693 applied to "the Charity Hospital of this State." The statute has been amended several times since, broadening its scope to encompass certified copies of the medical records of any hospital.
"The statute's purpose is to save a litigant the difficulty and expense of producing as a witness each person who assisted in the treatment of the patient." Holmes v. Caeser, 528 So.2d 1391, 1392 (La.App. 4th Cir.1988). "It provides that the opposing party may defend against the record by calling those who made the record as witnesses under cross-examination." Holmes, 528 So.2d at 1392. "It provides for an exception to the hearsay rule with respect to those who made the medical record." Id. "Once LSA-R.S. 13:3714 is complied with, the records are admissible." Aites v. State through Department of Transportation, 512 So.2d 865 (La. App. 3d Cir.), writ denied, 514 So.2d 133 (1987). Accordingly, the court of appeal in Aites held that the trial court erred in ruling that hospital records signed by its administrator are inadmissible without a foundation first being laid, explaining that "[t]he weight given the records is determined by the presence of expert testimony to interpret those records." Id.
Plaintiffs' primary complaint, relying on State v. Rowell, 517 So.2d 799 (La. 1988) and Socorro v. City of New Orleans, 579 So.2d 931 (La.1991), is that defendants failed to establish an adequate chain of custody[3] for the introduction into evidence of the blood alcohol test result. This Court in Rowell, a criminal case, stated the following:
In order for the state to avail itself of the statutory presumption of a defendant's intoxication arising from a chemical analysis of his blood under La.R.S. 32:662,[4] it must show that the state has promulgated detailed procedures which will insure the integrity and reliability of the chemical test, including provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy.
Id. at 800. What plaintiffs in this case failed to note, however, is that this is not a criminal case, nor is there involved here the statutory presumption of intoxication.
As stated by this Court in State v. McElroy, 553 So.2d 456, 458 (La.1989) and later in State v. Honeyman, 560 So.2d 825, 828 (La.1990), "Rowell is not pertinent when the state does not rely on the statutory presumption of intoxication." As stated in McElroy:
[W]ithout the benefit of the statutory presumption of intoxication, the state may nonetheless endeavor to prove that a defendant was ... intoxicated, and, in the process, attempt to use all admissible evidence, including the hospital record, ...
553 So.2d at 458. And, "[g]enerally, the blood alcohol test result, as part of a hospital record, is admissible [even] absent compliance with Rowell." Id. at n. 1. Therefore, the Rowell reasoning does not control our resolution of the issue in this case.
Likewise, plaintiffs' reliance on Socorro is not persuasive. Admittedly, this Court in Socorro gave short shrift to a serious argument in large measure because we agreed *694 with the court of appeal's treatment on the subject. 579 So.2d at 945. We were impressed with the court of appeal's declaration that even if admissible, the probative value was lacking. Our treatment in Socorro hardly stands for a considered resolution of the legal issue we now seriously entertain for the first time.
Interestingly, although this Court has never precisely decided this issue, the lower courts in a number of instances have admitted evidence of blood alcohol tests under the medical records statute. For instance, the court of appeal in Gore v. City of Pineville, 598 So.2d 1122, 1124 (La.App. 3d Cir.), writ denied, 600 So.2d 681 (La.1992), specifically held that "under the provisions of LSA-R.S. 13:3714 the blood test results were properly admitted without laying a foundation." See generally Brown v. Collins, 223 So.2d 453 (La.App. 3d Cir.1969) (affirming the admission of blood test results pursuant to the hospital exception to the hearsay rule recognized in R.S. 13:3714); Hunter v. Benson Chevrolet Co., Inc., 572 So.2d 672, 673 (La. App. 5th Cir.1990) ("Compliance with the statute eliminates the need for a showing of chain of custody."). See also Jones v. Liberty Mutual Insurance Co., 568 So.2d 1091 (La.App. 5th Cir.1990), writ denied, 572 So.2d 72 (La.1991).
Indeed, absent the medical records exception, proponents of a blood alcohol test result are required to lay a proper foundation,[5] which foundation relates not only to the chain of custody, but also to the integrity and reliability of the chemical test. For example, in Wells v. State Farm Mutual Automobile Insurance Co., 573 So.2d 223, 227 (La.App. 1st Cir.1990), the court stated that "[t]he requirements for the introduction of a blood test analysis are very stringent; the party seeking to introduce such evidence must first lay a proper foundation for its admission." Pearce v. Gunter, 238 So.2d 534 (La.App. 3d Cir.1970). "This predicate must connect the specimen with its source, show that it was properly taken by an authorized person, properly labeled and preserved, properly transported for analysis and properly tested." Id. The purpose of the chain of custody rule is to assure the integrity of the evidence. Bufkin v. Mid-American Indemnity Co., 528 So.2d 589, 592 (La.App. 2d Cir.1988) (citing Schwab v. Galuszka, 463 So.2d 737 (La.App. 4th Cir.), writ denied, 464 So.2d 1386 (La.), cert. denied, 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985)).
On the other hand, the medical records exception obviates the need for laying a foundation for admissibility. The language of R.S. 13:3714 is clear that a certified copy of any hospital record shall be received in evidence as prima facie proof of its contents. "Courts and commentators alike generally consider medical records, including records reflecting a patient's [blood alcohol concentration] BAC, to be inherently reliable because medical personnel rely on the information in those records in making life and death decisions."[6] Raymond P. Ward, Admissibility Under Louisiana Law of the Results of Chemical Tests of a Person's Blood Alcohol Concentration, 35 LOY.L.REV. 1402, 1419 (1990).
Louisiana, like other states, considers hospital records to be inherently reliable. Id. No foundation, beyond certification, is required for the admission of certified hospital records. See LA.REV.STAT. § 13:3714. "Consequently, the Pearce requirement of connecting the specimen with *695 its source, ... properly labeled and preserved,... and properly tested, does not apply when the results of a BAC test sought to be admitted into evidence appear in a hospital record." Ward, supra, at 1420. And, on the same note, the Rowell requirements do not apply when the state does not rely upon the statutory presumption of intoxication. McElroy, 553 So.2d at 458.
"The purpose of section 13:3714 is to eliminate the requirement that the proponent of hospital records lay such a foundation for their admission." Id. "The statute shifts the burden to the other party to undermine the hospital record's credibility by cross-examining those who made the record." Id. Then, the proponent of the BAC test results must produce expert testimony to interpret those results because the presumption of intoxication is not available and without expert testimony to interpret the results, they will have very little evidentiary weight. Id.
Furthermore, there are many reasons why a medical record is reliable. "There is no motive for the person whose duty it is to make the entries, to do other than record them correctly and accurately." Charles T. McCormick, The Use of Hospital Records as Evidence, 26 TUL.L.REV. 371, 372 (1952). "On the other hand, there is the strongest reason why he should: [B]ecause of the great responsibility, he knowing that the treatment of the patient depends largely upon this record." Id.
Moreover, blood tests performed by hospital personnel and intoxilyzer tests performed by police are distinguishable in several significant respects. Morris v. Shanahan, 1993 WL 141861, at *5 (Del.Super. Apr. 8, 1993). "First, the reliability of the [intoxilyzer] testing process can be challenged." Id. In fact, the court in Morris held that it was error to admit the intoxilyzer test in evidence without the testimony of the person who conducted the test. Id. There is a substantial difference between a police officer administering an intoxilyzer test and a nurse or doctor administering a blood test. For instance, the scientifically controlled conditions surrounding the hospital performed blood test are absent when a police officer administers an intoxilyzer test. Further, it is reasonable to presume that a hospital is staffed with personnel who competently perform their day-to-day tasks. Stroud v. Roper Corp., No. 88 CIV. 1093, 1990 WL 115610, at *1 (S.D.N.Y. Aug. 9, 1990). To this extent, hospital tests deserve a presumption of accuracy more so than other types of tests.
"Second, police officers are not neutral participants in the same sense as hospital personnel." Morris, 1993 WL 141861, at *5. "Finally, the increased reliability of medical records due to their use `in connection with medical treatment which may involve life and death consequences,' is not present in the intoxilyzer context." Id.
Additionally, although this Court is not bound by the decisions of our sister state courts, their decisions offer insight. The trend in the majority of the states addressing the admissibility of blood alcohol tests is to admit the evidence.[7] For example, the Florida Supreme Court in Love v. Garcia, 634 So.2d 158, 159 (Fla.1994), stated that "[t]he medical record exception includes routine blood tests which disclose alcohol content if the tests are a component of the hospital or medical records." Moreover, once the statute's requirements are met, the burden is on the party opposing the introduction to prove the untrustworthiness of the records. Id. at 160. "However, even if a proper predicate has been laid or the opposing party cannot prove the untrustworthiness of the evidence, the records still must withstand the test of relevancy." Id. Accordingly, a trial judge may exclude the records if they are unfairly prejudicial, Id., or as our LA.CODE EVID. art. 403 states "if its probative value is substantially outweighed by the danger of unfair prejudice."
*696 Likewise, the Georgia court in Bynum v. Standard (Chevron) Oil Co., 157 Ga.App. 819, 278 S.E.2d 669, 672, cert. dismissed, 248 Ga. 254, 285 S.E.2d 186 (1981), held that blood-alcohol test results were admissible as part of a hospital record. "Even assuming there were gaps in the chain of custody, Code Ann. § 38-711 provides that when evidence is otherwise properly admitted as a business record all other circumstances of the making of such writing or record ... may be shown to affect its weight, but they shall not affect its admissibility." Id. Hence, "gaps in the chain of custody of the blood sample admitted as part of the hospital record would not affect the admissibility of the test results but merely go to the weight of the evidence." Id. See also McCall v. Parker, 177 Ga.App. 774, 341 S.E.2d 303, 304 (1986) ("lab report was certified as true and correct copy of medical records and therefore it was not necessary to lay a foundation for its admission by offering the testimony of the medical personnel who performed the various tests"); Commonwealth v. Kravontka, 384 Pa.Super. 346, 558 A.2d 865, 867 (1989) (Blood alcohol test results "were admissible under the hospital records exception ... since a blood-alcohol test is basic and routine, it is highly reliable and thus rises beyond a mere opinion or conclusion to the level of medical fact.").[8]
Finally, by analogy, the business records exception to the hearsay rule found in Federal Rule of Evidence 803(6)[9] does not require a showing of chain of custody. The plaintiff in Pieters v. B-Right Trucking, Inc., 669 F.Supp. 1463, 1465 (N.D.Ind.1987), argued that the defendant must show chain of custody before the hospital record can be admitted under 803(6). "While the Rule requires that a custodian or qualified witness testify that the requirements of the business records exception have been met, there is no requirement that the `qualified witness' must have personally participated in or observed the creation of the document." Pieters, 669 F.Supp. at 1465 (citing United States v. Moore, 791 F.2d 566, 574, rev'd on other grounds, 865 F.2d 149 (7th Cir.1989)). "If the defendant can satisfy the requirements of Federal Rule of Evidence 803(6) as set forth above, the records will be admitted into evidence." Id.
Similarly, if defendants in this case can satisfy the requirements of R.S. 13:3714, then the medical records, including the blood alcohol test result, will be admitted into evidence as prima facie proof of its contents. However, the weight given the records will be effected by the expert testimony which may be offered to interpret the records. The weight is also affected by evidence introduced by either party regarding the character of the chain of custody, the quality of the testing procedures, or any other relevant factors that may be developed on cross-examination.

DECREE
For the foregoing reasons we affirm the district court's ruling denying plaintiffs' motion to exclude the evidence and remand the case for further proceedings.
AFFIRMED AND REMANDED.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The principal purpose of La.Rev.Stat. 13:3714 is to obviate the hearsay objection to entries in hospital medical records by persons *697 who made the entries based on their first hand knowledge. The statute relieves the litigants of calling as witnesses the doctors, nurses and others who made up the record.
The statute, however, was not intended as a blanket approval for admission of everything that is found in hospital records. An entry by a nurse of irrelevant information is subject to an objection to relevancy, even though the nurse who made the entry need not be called to verify it. An entry by a nurse of a declaration made by a third party is subject to an objection of hearsay within hearsay, although the statute dispenses with calling the nurse to overcome the fact that the hospital record itself is hearsay. Likewise, the entry of a blood alcohol test result obviates the necessity of calling the technician to identify the entry, but the evidence is still subject to objections to the competency of the technician, the accuracy of the sample, the proper maintenance of the testing machine, and the like. The statute simply does not shift the burden to the opponent of the evidence as to relevancy, competency, foundation, and such admissibility requirements other than hearsay.
NOTES
[*] Judge Lemmie O. Hightower, Court of Appeal, Second Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit. Hightower, J., not on panel. Rule IV, Part 2, § 3.
[1] 13:3714 provides:

Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination.
LA.REV.STAT. § 13:3714 (West 1995).
[2] Act No. 90 of 1938 provided "that certified copies of the charts and records of the Charity Hospital of this State shall be received in evidence in the Courts of this State as prima facie proof of their contents." LA.REV.STAT. § 13:3714 (1938), amended by LA.REV.STAT. § 13:3714 (1995).
[3] Note for purposes of this opinion that the terms "foundation" and "chain of custody" will be used interchangeably as has been done by the Louisiana Courts of Appeal. For instance, the court in Richardson v. Continental Ins. Co., 468 So.2d 675, 680 (La.App. 3d Cir.), writ denied, 474 So.2d 1304 (La.1985), stated that "the party seeking to introduce such evidence must first lay a proper foundation for its admission by connecting the specimen with its source, showing that it was properly taken by an authorized person, properly labeled and preserved." Accordingly, it is apparent that satisfying the foundation requirement entails establishing a chain of custody.

Alternatively, "for the state to avail itself of the statutory presumption of a defendant's intoxication..., it must show that the state has promulgated detailed procedures which will insure the integrity and reliability of the chemical test, including provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy." Rowell, 517 So.2d at 800. So when we refer to foundation and chain of custody, we are referring to both connecting the specimen with its source and employing procedures that insure the integrity and reliability of the chemical test.
[4] 32:662 A.(1)(c) provides: "If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcoholic beverages." LA.REV.STAT. § 32:662 A.(1)(c) (West 1995).
[5] Allemand v. Zip's Trucking Co., Inc., 552 So.2d 1023 (La.App. 1st Cir.1989), writ denied, 558 So.2d 569 (1990); Bufkin v. Mid-American Indem. Co., 528 So.2d 589 (La.App. 2d Cir.1988); Richardson v. Continental Ins. Co., 468 So.2d 675 (La.App. 3d Cir.), writ denied, 474 So.2d 1304 (1985); Holmes v. Christopher, 435 So.2d 1022 (La.App. 4th Cir.), writs denied, 440 So.2d 723, 724, 765 (1983); Swanson v. Estate of Augusta, 403 So.2d 118 (La.App. 4th Cir.), writ denied, 407 So.2d 732 (1981); Lapoint v. Breaux, 395 So.2d 1377 (La.App. 1st Cir.), writ denied, 399 So.2d 611 (1981).
[6] See, e.g., McLean v. State, 482 A.2d 101, 104 (Del.1984); Commonwealth v. Riley, 22 Mass. App.Ct. 698, 497 N.E.2d 651, 654 (1986); Tennant v. Roys, 44 Wash.App. 305, 722 P.2d 848, 852 (1986); E. CLEARY, MCCORMICK ON EVIDENCE § 313 (3d ed. 1984). See generally Donald M. Zupanec, M.A., J.D., Annotation, Admissibility Under State Law of Hospital Record Relating to Intoxication or Sobriety of Patient, 80 A.L.R.3d 456 (1977).
[7] In the following 11 states which considered the admissibility of hospital records relating to intoxication under state law, the courts held or recognized that such records can be admitted into evidence either under a statutory or common-law exception to the hearsay rule: Alabama, Connecticut, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New York, Oregon, Pennsylvania, and Texas. Zupanec, supra note 6, at 467, for a list of the cases so holding.
[8] For other cases admitting into evidence the results of a blood alcohol test see: Johnson v. Robert's Hawaii Tour, Inc., 4 Haw.App. 175, 664 P.2d 262, 267 (1983); Tennant v. Roys, 44 Wash. App. 305, 722 P.2d 848 (1986); Cyr v. Hurd, 554 A.2d 345 (Me.1989).
[9] In pertinent part, the rule excludes from hearsay the following:

[a] memorandum, report, record, or data compilation, in any form of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness.
FED.R.EVID. 803(6).