822 So.2d 29 (2002)
Frank BOLTON, Jr.
v.
B E & K CONSTRUCTION.
No. 2001 CA 0486.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
*31 Barry Bolton, Bogalusa, Counsel for Plaintiff/Appellant Frank Bolton, Jr.
Lawrence B. Frieman, Metairie, Counsel for Defendant/Appellee B E & K Construction.
Before: FITZSIMMONS, DOWNING, and LANIER[1], JJ.
LANIER, J.
The employee, Frank Bolton, Jr. (Bolton), claims he was injured on August 13, 1998, while in the course and scope of his employment with defendant, B E & K Construction (BE & K). Bolton's claim for workers' compensation benefits was denied by BE & K on the basis that no accident had occurred. The Office of Workers' Compensation (OWC) Judge found as a fact that Bolton failed to prove he suffered an accident while in the course and scope of his employment and denied the claim. Bolton took this devolutive appeal.

FACTS
Bolton was hired by BE & K on August 10, 1998 as a laborer. That same day he was required to submit to a drug test as part of the hiring process. A urine sample was collected from Bolton and sent to Laboratory Specialists, Inc. (LSI) for analysis.
Before the results of the drug test were received, Bolton began work at BE & K. His duties included using a jackhammer to break up concrete, picking up broken pieces of concrete, loading them into a wheelbarrow, rolling the wheelbarrow up an incline and dumping the concrete in a pile for dump trucks to haul away. Bolton completed the four-day work week by working 10 hour shifts on August 10, 11, 12, and 13. During this period of time, Bolton never complained to anyone about being injured.
After the weekend, Bolton returned to work on Monday, August 17. That morning, Richard Levert (Levert), BE & K's office manager at the site, received a phone call from LSI with the results of Bolton's drug test. The test indicated that Bolton had tested positive for cocaine. *32 Consequently, Levert summoned Bolton to the office to terminate his employment. When he entered the office, Bolton informed Levert that he hurt his back the previous week.
Bolton asserts that he injured his back and neck in an accident that occurred on August 13, 1998, while he was performing his duties at BE & K. He admits that he did not report the accident at the time it occurred. He further concedes that the first time he ever informed anyone about his injury was when he was summoned to the office on August 17. Bolton testified that he had no idea why he was called into the office, but once there, he immediately reported his accident to Levert. Levert then informed Bolton that he was being terminated due to his positive drug test. Bolton denied using any drugs prior to taking the test.

ADMISSIBILITY OF EVIDENCE (Assignment of Error 4)
Bolton contends the OWC judge committed legal error by admitting into evidence the LSI drug test report and other medical evidence. If the OWC judge committed evidentiary error that interdicted his factual decision, this court would conduct a de novo review rather than a manifest error review. Gordon v. Sandersons Farms, 96-1587, p. 2 (La.App. 1 Cir. 5/9/97), 693 So.2d 1279, 1282. Thus, the evidentiary issue must be addressed first.
Workers' compensation judges are not strictly bound by the technical rules of evidence. La. R.S. 23:1317(A). The applicable statute only requires that all findings of fact be based upon "competent evidence." Id. In other words, the OWC judge has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 10 (La.3/4/98), 708 So.2d 375, 381. The legislative requirement that a hearing officer's factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Id. Therefore, when a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable and supported by competent evidence in the record. Id. If so, then the reviewing court must affirm them. Id.
However, such a relaxed evidentiary standard brings the possibility that some incompetent evidence will be admitted. Id., 97-1225 at pp. 13-14, 708 So.2d at 383. Therefore, the legislature has granted hearing officers the discretion to disregard such admissible, but incompetent, evidence in reaching factual findings. Id. Thus, when a reviewing court finds incompetent evidence in the record, it must apply a manifest error standard of review, unless it is clear from the hearing officer's written or oral reasons for judgment, or otherwise evident from the record, that the hearing officer actually relied on incompetent evidence in arriving at his factual findings. Id. If it is clear that the OWC judge relied on incompetent evidence, the reviewing court must conduct a de novo review of the competent evidence, giving no deference to the OWC judge's factual findings, and render judgment. Id.
In Chaisson, the Louisiana Supreme Court found that hearsay evidence could qualify as "competent evidence" provided that it possessed some degree of reliability and trustworthiness and was of the type upon which reasonable persons would rely. Id., 97-1225 at pp. 12-13, 708 So.2d at 382.
*33 Bolton argues the OWC Judge erred in admitting the LSI drug test report. In his written reasons for judgment, the OWC judge found Bolton was not credible and that his testimony regarding his drug use was "unconvincing." Thus, it appears that the contested evidence was actually relied upon by the OWC judge. Therefore, we must determine whether the LSI drug test report qualifies as competent evidence such that it possesses some degree of reliability and trustworthiness and is of the type upon which reasonable persons would rely.
The record indicates that LSI, whose business entails conducting drug tests, is certified by the federal government, the National Laboratory Certification Program, the College of American Pathologists, the State of Louisiana, and the Nuclear Regulatory Commission. At trial, Bolton stipulated to the authenticity of LSI's drug test report which was further certified and attested to by Dr. Leon Glass, who was responsible for assuring that the test was conducted under the applicable guidelines. Our review of the report leads us to conclude that it possesses all the indicia necessary to qualify as competent evidence.
At trial, counsel for Bolton argued that the drug test report was irrelevant unless it could be shown that Bolton was under the influence at the time the accident occurred. BE & K countered that it was relevant to the defense of their claim and to Bolton's credibility. BE & K contends that Bolton suffered no accident at all; and knowing he was going to be terminated for testing positive for drugs, he had a motive for claiming an accident to receive compensation benefits. BE & K further offered the failed drug test report to contradict Bolton's sworn testimony that he had not used cocaine before the drug test was conducted. Bolton denied ever using cocaine at any point in time. The drug test report directly contradicted his testimony. Bolton then testified that the only way cocaine could have gotten into his system was if, without his knowledge, it had been mixed in with some marijuana he smoked. However, the drug test report further contradicted this explanation. The drug test report indicated that Bolton tested positive for cocaine, but negative for marijuana. Dr. Glass testified that if Bolton had simultaneously ingested marijuana and cocaine, then the marijuana would have shown up on the report along with the cocaine, because marijuana has a much longer half-life and will stay in the body longer than cocaine will. Because the report contradicts Bolton's testimony, it was admissible as competent evidence.
On appeal, Bolton contends that because BE & K promulgated no written drug policy and conducted no drug test at the time of the alleged accident, the LSI drug test report was improperly admitted to prove he was intoxicated at the time of accident and thus precluded from receiving benefits pursuant to La. R.S. 23:1081. Bolton's argument is wholly misplaced. BE & K has never asserted that Bolton was intoxicated at the time of the accident. BE & K specifically repudiated that defense. BE & K contends that Bolton suffered no accident at all.
Furthermore, although referenced in another assignment of error, appellant notes in brief, that he "objected to the use of any related medical records to the extent of any reference to drugs that may have been in Mr. Bolton's system at the time of injury. Court [sic] allowed defendants to offer medicals [sic] to show injuries not relating in any manner to the on the job injuries. Plaintiff objected to the use of defendant's witness Dr. Glass as an interpreter of the medical records in which he had no knowledge."
*34 Certified medical records from Medical Center of Louisiana/Charity Hospital in New Orleans and L.S.U. Washington-St. Tammany Regional Medical Center in Bogalusa containing drug test results indicating positive results for cocaine and marijuana were introduced to contradict Bolton's testimony that he never used cocaine. There was no evidentiary error in this. When Bolton objected to the relevance of these records, the OWC judge specifically found it "relevant because it goes to his credibility. He's testified that he has never done this before and this shows that there is a possibility that he had." As for any objection to the authenticity of the records, La. R.S. 13:3714 provides that certified medical records shall be received in evidence as prima facie proof of their contents. No foundation, beyond certification, is required for their admission. Judd v. State, Dept. of Transp. and Development, 95-1052, p. 6 (La.11/27/95), 663 So.2d 690, 694.
The L.S.U. Washington-St. Tammany medical records also were used to contradict Bolton's testimony about accidents and injuries he sustained before and after the alleged accident at BE & K. Bolton testified he suffered only two injuries prior to the accident at BE & K. However, the certified medical records indicate Bolton sustained two additional injuries he did not report. Bolton testified he suffered no injuries or accidents after his employment with BE & K. However, the same certified medical record proves that approximately one and half months after the alleged accident at BE & K, Bolton visited the emergency room with an injury to his ankle sustained by jumping off a porch. These certified medical records are prima facie proof of their contents, and were properly used to contradict Bolton's testimony in a case that hinges, in part, on his credibility.
In response to Bolton's objection to Dr. Glass interpreting medical records about which he had no knowledge, it is well settled that an expert may testify on matters not within his personal knowledge and that he or she may rely on data prepared by others. See La.Code of Evid. Art. 703 and Official Comment (c); State v. Pooler, 96-1794, pp. 51-52 (La.App. 1 Cir. 5/9/97), 696 So.2d 22, 55, writ denied, 97-1470 (La.11/14/97), 703 So.2d 1288; State v. Brossette, 93-1036, pp. 8-9 (La.App. 3 Cir. 3/2/94), 634 So.2d 1309, 1316, writ denied, 94-0802 (La.6/24/94), 640 So.2d 1344. Dr. Glass was accepted as an expert in toxicology and pharmacology without objection from Bolton. He is the scientific director of a company that conducts drug testing, the same company that performed Bolton's drug test for BE & K. There was no error in allowing him to interpret the drug test results contained in the certified medical records.
The certified medical records and Dr. Glass' testimony also qualify as "competent evidence." Louisiana considers medical records to be inherently reliable. Judd, 95-1052 at p. 6, 663 So.2d at 694. Since certified medical records are accepted as prima facie proof of their contents in any court of competent jurisdiction pursuant to La. R.S. 13:3714, then, a fortiori, those same certified records qualify as competent evidence in the relaxed evidentiary arena of a workers' compensation proceeding. Dr. Glass' impressive credentials and his considerable experience in conducting drug tests are such that a reasonable person could rely on his opinion and his interpretation of drug test results.
The OWC judge based his factual findings on competent evidence, and committed no evidentiary error requiring a de novo review.
This assignment of error is without merit.

*35 STANDARD OF REVIEW
The standard of appellate review of factual findings in a civil action is a two-part test: 1) the appellate court must find from the record there is a reasonable factual basis for the finding of the factfinder, and 2) the appellate court must further determine the record establishes the finding is not manifestly erroneous (clearly wrong). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the trial court's or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La. 1990). Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Sistler, 558 So.2d at 1112; Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).

PROOF OF AN ACCIDENT (Assignments of Error 1, 2 and 3)
Bolton argues that the OWC judge erred in finding that he did not meet his burden of proving that he sustained an accident in the course and scope of his employment.
An employee who sustains a personal injury by accident arising out of and in the course and scope of his employment is entitled to collect workers' compensation benefits from his employer, unless he is otherwise not entitled to benefits under the provisions of Title 23. La. R.S. 23:1031(A). "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1).
The claimant has the burden of proof to establish a work-related accident by a preponderance of the evidence. Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992). In determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence, a claimant's testimony is accorded great weight. Id. In Bruno, the Louisiana Supreme Court stated that a worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and, (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Id. Therefore, if the worker testifies that he suffered an accident, a court must then look to see if the Bruno elements are satisfied. Coats v. American Tel. & Tel. Co., 95-2670, p. 5 (La.10/25/96), 681 So.2d 1243, 1245.
In the instant case, the OWC judge specifically found as a fact that Bolton's testimony was not credible and that he failed to prove he suffered an accident in the course and scope of his employment. In his reasons for judgment, the OWC judge noted that although the testimony of the claimant alone may be enough to prove the occurrence of a work-related accident, "[i]n this case the corroboration was not there, besides the unreliability of the claimant's testimony." Therefore, we must review the record to see whether the OWC judge was manifestly erroneous in finding that Bolton had not satisfied the requirements of Bruno; and, thus, failed *36 to prove by a preponderance of the evidence that he sustained a work-related accident.
For the claimant's testimony alone to be sufficient in discharging his burden of proof, the first prong of Bruno requires that no other evidence discredit or cast serious doubt on the claimant's version of events. In the instant case, Bolton's testimony about other injuries he sustained before and after the alleged accident at BE & K, as well as his testimony about his drug use, was contradicted by substantial competent evidence.
The OWC judge found as a fact that Bolton "vacillated about the exact way his accident was supposed to have happened." This finding is amply supported by the record. In the BE & K Occupational Injury Illness Report completed and signed by Bolton on August 17, 1998, he stated that he "hurt [his] back picking up concrete." That same day, Bolton was taken to Dr. E.B. Scoggin who noted in his records that Bolton was injured when he "picked up a chunk of concrete." In the Disputed Claim for Compensation form (Disputed Claim form) completed by Bolton on December 9, 1998, he described the accident and injury in the following statement: "[E]very day roll[ing] and lifting brick that [weighed] about 70-100 pounds made my back start hurting." Bolton subsequently completed a second Disputed Claim form on August 24, 1999 about the same alleged incident; however, on that occasion, he described the accident and injury as occurring by "picking up cement in wheel barrel [sic] and rolling it up a hill when I felt a catch in my back." In response to the interrogatory propounded by BE & K questioning Bolton as to how the accident occurred, Bolton responded that he hurt his back when he "picked up a heavy wheel barrel [sic] of concrete." During Bolton's deposition, he was again questioned about the particular event that caused his injury. At this time, Bolton stated his injury occurred when the wheelbarrow he was pushing turned over causing him to fall with it. When questioned again about how he actually hurt his back, Bolton responded, "[w]ell probably that and the concrete. When the wheelbarrow and I fell and picking up all that concrete, you know." Later in his deposition, Bolton stated that "picking up all that concrete and rolling it up the hill, that's what hurted [sic] me." Finally, during the trial of this matter, Bolton's testimony about how the accident occurred was again less than consistent. Pertinent portions of this testimony follow:
Q: Was there ever a time that you felt anythingany particular thing that let you know exactly when you got injured?
A: Yes. When I was picking up on the concrete.
* * *
Q: Okay.... Did you feel anything or was it just a gradual or what happened to let you know that you were injured?
A: When I fell with the wheelbarrow. I had [sic] fell with it trying to go up the ramp.
* * *
Q: Did you or did you not consider picking up the brick and rolling the wheelbarrow the same job?
A: No, they was [sic] two different jobs.
Finally, in both Disputed Claim forms, Bolton claimed that two co-workers were witnesses. However, he presented neither one to corroborate any of his versions of how his accident occurred.
Considering Bolton's contradicted testimony about his injuries and drug use, and his inconsistent testimony and statements *37 about how his accident occurred, we cannot say that the OWC judge was manifestly erroneous in finding that the first prong of Bruno had not been satisfied.
Furthermore, we find the second prong was not met either because Bolton's testimony was not corroborated by the circumstances following the alleged event. In his first Disputed Claim form, Bolton claims his accident occurred at 9:00 a.m. However, he did not report it to anyone. Instead he continued working his full ten-hour shift doing heavy manual labor which included breaking up concrete and carting it away.
He testified that he considered the injury he sustained at BE & K a "major" injury. He stated that during the three-day weekend following his alleged accident he could barely stand up, yet he sought no medical attention. However, approximately one and a half months later, Bolton suffered what he considered a "minor" injury to his ankle when he jumped off a porch, but on this occasion he went to the Emergency Room to get a shot of Toradol, a pain killer.
Further, despite Bolton's contention that he could hardly stand up due to his injury, he reported to work on Monday morning as scheduled and he informed no one of his accident. At trial, he claimed that he couldn't pick up any concrete that morning due to his injury. However, during his deposition, he claimed he was doing just that, picking up concrete, when the foreman summoned him to the office. It was only when Bolton was brought into the office to be terminated for failing his pre-employment drug test that he finally informed BE & K that he had suffered an accident the previous week.
A workers' compensation judge's determinations as to whether the claimant's testimony is credible, and whether the claimant has discharged his burden of proof, are factual determinations which will not be disturbed on review in the absence of manifest error. Bruno, 593 So.2d at 361. After a thorough review of the record, we are unable to find manifest error in the findings of the OWC judge. Bolton presented no evidence to corroborate his testimony, and there is other evidence that casts serious doubt upon his credibility and version of events. There are two permissible views of the evidence in this case: (1) Bolton told the truth and there was an accident, or (2) Bolton did not tell the truth and there was no accident. The OWC judge chose the latter and did not commit manifest error.
This assignment of error is without merit.

ERRORS IN THE REASONS FOR JUDGMENT (Assignments of Error 1 and 2)
Bolton assigns as error particular inaccuracies in the OWC judge's reasons for judgment.
Among other findings of fact, the OWC judge stated in his written reasons for judgment that "[t]he testimony of Claimant's wife or companion was not credible. She testified that claimant was not having back problems before the accident, when it was stated on the hospital records that he was." Bolton argues that the trial court either confused this case with another case or was arbitrarily making decisions as no such female testified. Further, Bolton points out that the OWC judge's reasons for judgment mistakenly puts the date of the supposed accident on August 13, 2000 when it actually was alleged to have occurred on August 13, 1998.
It is axiomatic that a judgment and the reasons for judgment are two separate and distinct legal documents, and that appeals are taken from the judgment, *38 not the written reasons for judgment. See Huang v. Louisiana State Bd. of Trustees for State Colleges and Universities, 99-2805, p. 5 (La.App. 1 Cir. 12/22/00), 781 So.2d 1, 6. The court of appeal reviews judgments; and, where the court of appeal believes that the trial court reached the proper result, the judgment will be affirmed. Id. Accordingly, even if the trier of fact erred in a finding of fact, we are constrained to affirm the judgment if the judgment is reasonable in light of the record as a whole. Id. The inquiry on appeal is whether the record contains sufficient evidence to support the conclusions reached by the trier of fact. Id., 99-2805 at p. 6, 781 So.2d at 6. In the instant case, the record as a whole supports the findings of the OWC judge.
These assignments of error are without merit.[2]

DECREE
For the foregoing reasons, the judgment of the OWC judge is affirmed. Bolton is cast with the costs of this appeal.
AFFIRMED.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeals, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Because of our rulings on Bolton's assignments of error 1, 2, 3 and 4, it is unnecessary for us to consider assignments of error 5, 6 and 7.