866 So.2d 882 (2004)
Lionel SANFORD
v.
CITY OF NEW ORLEANS, New Orleans Aviation Board and State of Louisiana, Through the Department of Transportation and Development.
No. 2003-CA-0883.
Court of Appeal of Louisiana, Fourth Circuit.
January 21, 2004.
*883 Edward B. Mendy, Donglai Yang, Mendy & McElroy, LLC, New Orleans, LA, for Plaintiff/Appellant, Lionel Sanford.
Alston Johnson, Marshall M. Redmon, Rebecca B. Crawford, Phelps Dunbar, L.L.P., Baton Rouge, LA, for Defendant/Appellee, City of New Orleans by and Through the New Orleans Aviation Board.
(Court composed of Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The plaintiff, Lionel Sanford, was in a serious automobile accident on the New Orleans International Airport Access Road in Kenner, Louisiana. He sued the City of New Orleans, the New Orleans Aviation Board, and the State of Louisiana through *884 The Department of Transportation and Development, alleging that his injuries were the result of the design and condition of the roadway and the location of a directional sign that he hit. The trial court rendered judgment in favor of the defendant, the City of New Orleans by and through the New Orleans Aviation Board[1]. Mr. Sanford is appealing.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
Mr. Sanford was driving his pickup truck on the airport access road during a light rain in the early evening. Witnesses observed him speeding through a curve and losing control of his vehicle. He swerved into the opposite lane, sideswiped an oncoming car, and swerved back into his own lane. Then he drove off the road and struck a large directional sign on the side of the road. Mr. Sanford lost consciousness in the accident. He was ultimately taken by ambulance to the emergency room at East Jefferson Hospital, where he was admitted. Mr. Sanford was seriously and permanently disabled as a result of the accident.
The police officer, who investigated the accident, smelled a strong odor of alcohol on Mr. Sanford's breath when she first checked his condition at the scene of the accident. She, therefore, concluded that he had been drinking. The police officer cited Mr. Sanford for careless operation of a vehicle and for having a switched license plate, and she also determined that there were no obvious defects in the access road that could have caused the accident.
When Mr. Sanford arrived at the hospital, the emergency room physician on duty ordered a number of laboratory tests and radiological procedures, one of which was a test to determine the level of alcohol in Mr. Sanford's blood. The test showed that Mr. Sanford had a blood alcohol concentration of 0.199.
At trial Mr. Sanford argued that there was no proof that the blood tested for its alcohol concentration was his, because the vial in which the blood was collected was labeled with the name "John Doe 71". Also, there was a very minor discrepancy in the time the blood was recorded as having been drawn and the time that Mr. Sanford arrived at the hospital. Therefore, Mr. Sanford objected to the introduction of the results of his blood alcohol test into evidence.
Witnesses at the trial, however, testified that they had no doubts that the blood that was tested for its blood alcohol concentration was, in fact, Mr. Sanford's blood. The testimony at the trial established that the procedures for collecting and testing blood from emergency room patients relied on a medical record number, not the patient's name, for the identification of the blood samples. The testimony also established that the medical record number for all of Mr. Sanford's test results, including the blood alcohol test, was the same. Additionally, the discrepancy between the time the blood was drawn for the blood alcohol test and the time Mr. Sanford arrived at the hospital was explained by the testimony of an emergency medical services supervisor. He testified that the time the blood was drawn was based on a clock at the hospital and that the time Mr. Sanford arrived in the emergency room was based on the clock at the office of the ambulance service. Therefore, a discrepancy of a few minutes was inconsequential.
*885 Mr. Sanford claimed that the accident occurred, because the airport access road did not have a median barrier. Mr. Sanford also contended that the sign he hit should either have been placed farther from the side of the road, constructed with a breakaway support, or protected with a guardrail. According to Mr. Sanford's argument, had any of these protective measures been taken, the accident could have been avoided or its severity lessened.
The case was tried before the judge. After Mr. Sanford concluded the presentation of his case, the Aviation Board moved for an involuntary dismissal of Mr. Sanford's claim that the lack of a median barrier caused or contributed to the accident. The judge granted the dismissal, because she found that the absence of a median barrier was not a cause of the accident. Additionally, Mr. Sanford's own expert witness in highway design and engineering had testified that he could not say that a median barrier would have prevented Mr. Sanford's accident.[2] After the involuntary dismissal of the claims regarding the median barrier, the Aviation Board presented its case.
Both Mr. Sanford's expert witness in highway design and engineering and the Aviation Board's expert witness in civil engineering, highway design, and accident reconstruction testified that roads such as the airport access road must have clear zones. The Aviation Board's expert defined "clear zone" as "an area adjacent to the travel lane, which is to be kept free of obstacles and excessive slopes on the roadside area because that type of environment gives the driver the opportunity to recover." He also testified that "[s]hould he [the driver] exit the highway, there's room to maneuver, get back on the highway and not have an accident."
Both experts agreed that the sign that Mr. Sanford hit was required either to be placed outside of the clear zone or to be protected from a vehicle that might leave the roadway. The sign could be protected either by using breakaway supports in the construction of the sign or by constructing a guardrail that would deflect away from the sign any vehicle that might hit the guardrail.
Although both Mr. Sanford's and the Aviation Board's experts on highway design and engineering agreed regarding the need for a clear zone, they used different standards for determining the size of the clear zone. In her Reasons for Judgment, however, the trial court stated that the sign that Mr. Sanford hit was "beyond the clear zone articulated by either of them." The trial court also found that the only type of breakaway sign post that might have changed the result of Mr. Sanford's accident was not available when the sign was constructed. Additionally, both experts agreed that there was no need for a guardrail if the sign were not located within the clear zone. Therefore, the trial court found that the Aviation Board was not negligent in breaching the duty that is owed by those who own and maintain public highways and shoulders to protect persons who inadvertently drive off of the roadway. Finally, the trial court stated in her Reasons for Judgment that "the totality of the evidence establishes by a preponderance of evidence that this serious accident would have occurred whether or not the directional sign was outside the clear zone."
At trial both the Aviation Board's expert witness in civil engineering, highway design, and accident reconstruction and the Aviation Board's expert in forensic pathology *886 testified that Mr. Sanford's accident was caused solely by Mr. Sanford's own actions. The accident reconstruction expert testified that in his expert opinion the accident was due solely to driver error. He explained that had Mr. Sanford not been significantly impaired, he could have regained control of his vehicle after he first lost control. The forensic pathologist testified that a person under the influence with a 0.199 concentration of blood alcohol would be significantly impaired in maintaining control of his vehicle and in regaining control if he were to lose control. The forensic pathologist also testified that the 0.199 concentration of alcohol in Mr. Sanford's blood at the time the blood was drawn for testing may well have been higher at the time of the accident, because Mr. Sanford had been given fluids after the accident, and those fluids could have decreased the concentration of the alcohol in his blood. Finally, the forensic pathologist testified that it is a "general tested fact", not just his opinion, that a person with a blood alcohol concentration of 0.199 is too intoxicated to safely operate a motor vehicle.
After the trial was concluded the trial court judge rendered judgment in favor of the Aviation Board and the City of New Orleans. Mr. Sanford's suit was dismissed with prejudice. In her Reasons for Judgment the trial court judge stated that "plaintiff was the sole cause of the accident." She also found that "[a]bsent his intoxication, the testimony establishes that Mr. Sanford could have regained control of his vehicle and avoided striking the directional sign post."

STANDARD OF REVIEW
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), the Louisiana Supreme Court discussed as follows the issue of the scope of the appellate court's review of a trial court's findings of fact:
It is well settled that a court of appeal may not set aside a trial court's ... finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong....
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.
Id. at 844. See also Mistich v. Volkswagen of Germany, Inc., 95-0939, (La.1/29/96), 666 So.2d 1073; Aleman v. Favret Co., 349 So.2d 262 (La.1977); Harvey v. Cole, XXXX-XXXX (La.App. 4 Cir. 1/23/02), 808 So.2d 771.
In Glass v. Alton Ochsner Medical Foundation, XXXX-XXXX (La.App. 4 Cir. 11/6/02), 832 So.2d 403, this Court discussed the scope of appellate review of issues of law. This Court stated:
The standard of review of appellate courts in reviewing a question of law is simply whether the court's interpretative decision is legally correct. Furthermore, if the decision of the district court is based on an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court.
*887 XXXX-XXXX, p. 3; 832 So.2d at 405 (citations omitted). See also Sander v. Brousseau, XXXX-XXXX, p. 4 (La.App. 4 Cir. 10/4/00), 772 So.2d 709, 711, where this Court stated that "[a]ppellate review of a question of law involves a determination of whether the lower court's interpretive decision is legally correct."

DISCUSSION
Mr. Sanford claims that the trial court made a number of errors. We will address each of those alleged errors below.
Strict Liability
Mr. Sanford argues that the trial court should have applied La. C.C. art. 2317 to the instant case. That article provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... things which we have in our custody." In Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, the Louisiana Supreme Court articulated a three-prong test for determining the applicability of article 2317 to an action arising before 1996[3]. The Supreme Court stated:
In an action asserting liability under La. Civ.Code art. 2317 before 1996, the plaintiff bore the burden of proving three elements: (1) that the thing which caused the damages was in the care, custody, and control (garde) of the defendant; (2) that the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and (3) that the vice, ruin, or defect was the cause-in-fact of the plaintiff's damages. To recover, plaintiff bears the burden of proving these elements in the affirmative, and the failure on any one is fatal to the case.
99-3651, pp. 5-6, 765 So.2d at 1008 (citations and footnote omitted).
In the instant case the trial court did not find that the sign that Mr. Sanford hit or the roadway itself had a vice, ruin, or defect that created an unreasonable risk of harm. Additionally, the trial court found that the accident was caused solely by the actions of Mr. Sanford. Therefore, Mr. Sanford failed to prove the elements necessary to impose liability on the Aviation Board under La. C.C. art. 2317, and we find that the trial court's rejection of the strict liability claim under article 2317 was proper.
Weight of the Evidence
Mr. Sanford argues that the trial court should not have concluded that the blood sample from which his blood alcohol concentration was determined was, in fact, his blood. Mr. Sanford further argues that because of the possibility of an error in the identification of the blood sample, the trial court should not have given the weight it did to the evidence of his intoxication at the time of his accident.
La. R.S. 13:3714 provides as follows:
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question ... is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the ... chart, or record is sought to be used may summon and examine those making the original... chart, or record as witnesses under cross-examination.
*888 Pursuant to the provisions of this statute, the copies of the medical records from the hospital that were introduced into evidence at the trial are prima facie evidence of the test results, including the blood alcohol test results, that are contained in the records.
In Judd v. State, Department of Transportation and Development, 95-1052 (La.11/27/95), 663 So.2d 690, the Louisiana Supreme Court stated that "`[c]ourts and commentators alike generally consider medical records, including records reflecting a patient's [blood alcohol concentration] BAC, to be inherently reliable because medical personnel rely on the information in those records in making life and death decisions.'" 95-1052, p. 6, 663 So.2d at 694, quoting Raymond P. Ward, Admissibility Under Louisiana Law of the Results of Chemical Tests of a Person's Blood Alcohol Concentration, 35 Loy. L.Rev. 1402, 1419 (1990). The Supreme Court further stated that Louisiana considers hospital records to be inherently reliable and that no foundation beyond certification is required for certified hospital records to be admitted into evidence. Id.
Finally, in Judd the Supreme Court held that where a party can satisfy the requirements of La. R.S. 13:3714, the medical records, including blood alcohol test results, will be admitted into evidence as prima facie proof of the contents of the records. The Supreme Court then stated as follows:
[T]he weight given the records will be effected by the expert testimony which may be offered to interpret the records. The weight is also affected by evidence introduced by either party regarding the character of the chain of custody, the quality of the testing procedures, or any other relevant factors that may be developed on cross-examination.
95-1052, pp. 9-10, 663 So.2d at 696.
There was exhaustive evidence presented at the trial to establish that the blood that was tested was Mr. Sanford's. The trial testimony of the emergency room nursing supervisor at the hospital, the emergency room physician who actually treated Mr. Sanford, and an emergency medical services supervisor, who was familiar with the procedures that were followed in connection with Mr. Sanford's transport to the hospital by ambulance, established that the procedures that were followed in the hospital emergency room would insure that it was, in fact, Mr. Sanford's blood that was tested for its blood alcohol concentration.
Additionally, both the Aviation Board's expert on accident reconstruction and the forensic pathologist who testified at the trial opined that the accident was caused by Mr. Sanford's intoxication. In her decision, the trial court judge obviously gave great weight to the experts' testimony regarding the effect of alcohol intoxication on the ability to drive safely and to the testimony regarding the accuracy of the blood alcohol test. We do not find that the decision of the trial court judge regarding the weight to be given to the blood alcohol test or the effect of Mr. Sanford's intoxication on his ability to drive was either manifestly erroneous or clearly wrong. Therefore, the trial court's findings will not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Roadway Standards
Mr. Sanford argues that the trial court should have applied the minimum safety standards applicable to highway design that have been formulated by the American Association of State Highway and Transportation Officials ("AASHTO") in determining whether the airport access *889 road should have had a median barrier and in determining the size of the necessary clear zone for that portion of the road where the sign Mr. Sanford hit was located. Both Mr. Sanford and the Aviation Board presented the testimony of expert witnesses in highway design and engineering. Mr. Sanford's expert witness testified that the safety standards promulgated by AASHTO were applicable to the airport access road. The Aviation Board's expert witness testified that the AASHTO safety standards were not applicable to the sign that Mr. Sanford hit. Both experts, however, testified that there should have been a clear zone between the roadway and the sign, and the trial court determined that the sign was outside of the clear zone under both the safety standards used by Mr. Sanford's expert witness and those used by the Aviation Board's expert witness.
This Court is required to give great deference to the trial court judge's determination of which of the experts' opinions is more credible where there is a difference of opinion. See Rosell v. ESCO, 549 So.2d 840 (La.1989). Unless the trial court's determination is clearly wrong or manifestly erroneous, we will not disturb it on appeal. In the instant case, the trial court judge chose to believe the testimony of the Aviation Board's expert witness regarding the applicability of the AASHTO standards, and there is ample support in the record for this choice. We will defer to the trial court judge's determination on this issue.
Comparative Fault
Mr. Sanford argues that his intoxication and his fault should not bar recovery; rather, these factors should only reduce his recovery. See La.C.C. art. 2323, which requires fault to be apportioned among all persons contributing to an injury, death, or loss. Mr. Sanford cites the cases of Petre v. State, through Department of Transportation and Development, XXXX-XXXX (La.4/3/02), 817 So.2d 1107, and Campbell v. Louisiana Department of Transportation & Development, 94-1052 (La.1/17/95), 648 So.2d 898, in support of his argument and then states in his brief that "the only bar to recovery would be a finding of one hundred percent (100%) fault on the part of plaintiff." In the Petre case and in the Campbell case the trial court judge had allocated fault between the parties, and the Supreme Court affirmed the allocation of fault by the trial court in both cases. In the instant case, however, the trial court determined that Mr. Sanford was solely at fault. Because there was ample evidence in the record to support the trial court's determination that Mr. Sanford was solely at fault, her determination is neither manifestly erroneous or clearly wrong. Therefore, we will not disturb her allocation of fault to Mr. Sanford in the amount of one hundred percent. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Clear Zone
Mr. Sanford argues in his brief that the trial court erred "in not finding that the failure to provide an unobstructed or barrier protected clear zone had any bearing on Plaintiff's accident." This argument is without merit. There was no testimony that a median barrier would have prevented Mr. Sanford's injuries, and even Mr. Sanford's own expert witness on highway design and engineering testified that he could not opine that a median barrier would have prevented Mr. Sanford's accident. Additionally, the testimony of both Mr. Sanford's and the Aviation Board's highway engineering experts clearly supported the trial court's determination that the sign hit by Mr. Sanford was outside *890 the clear zone. Even though the experts used different standards for determining roadway safety, under either standard the clear zone requirements for the sign were met. The trial court judge's determination on this issue was neither manifestly erroneous nor clearly wrong. Therefore, we will not disturb her determination. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Procedural Errors
Mr. Sanford argues that the trial court made several procedural errors. Specifically, he claims that the court should not have limited him to admitting evidence of only one prior accident on the airport access road and that the court should have permitted testimony regarding the remedial measures that were taken after the accident to make the roadway safer. Additionally, Mr. Sanford claims that the trial court should have permitted his expert witness on highway design to use certain studies in connection with his testimony and that the trial court should have admitted into evidence certain exhibits.
All of the procedural errors alleged by Mr. Sanford are evidentiary matters. In Jones v. Peyton Place, Inc., 95-0574, pp. 11-12 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 763, this Court stated that "[a] trial court's rulings on ... evidentiary issues will not be disturbed unless a clear abuse of discretion is shown." See also Tadlock v. Taylor, XXXX-XXXX, p. 7 (La.App. 4 Cir. 9/24/03), 857 So.2d 20, 27. We find that Mr. Sanford has failed to show that the trial court judge abused her discretion in these evidentiary matters, and we find nothing in the record to show any abuse of discretion by the judge. Therefore, we will not disturb the trial court's ruling on the admissibility of the evidence Mr. Sanford argues should have been permitted to be introduced.

CONCLUSION
Based on the foregoing, we find no error in the trial court's judgment. The judgment is affirmed.
AFFIRMED.
NOTES
[1] At the time of the trial the only defendant remaining in the suit was the City of New Orleans acting through the Aviation Board.
[2] The most severe injuries suffered by Mr. Sanford resulted from his hitting the sign, not from sideswiping the car on the opposite side of the roadway.
[3] Effective November 23, 1995, La.R.S. 9:2800 requires a public entity to have actual or constructive notice of a defect in a thing under its care and custody before liability can be imposed on it under La.C.C. art. 2317. In the instant case, notice is not required, because the accident occurred prior to the effective date of the notice requirement.