845 So.2d 465 (2003)
Hubert A. SEVERIO
v.
J.E. MERIT CONSTRUCTORS, INC.
No. 2002 CA 0359.
Court of Appeal of Louisiana, First Circuit.
February 14, 2003.
*466 Henri M Saunders, Metairie, for Plaintiff/Appellee Hubert A. Severio.
Stephen H. Vogt, Baton Rouge, for Defendant/Appellant J.E. Merit Constructors, Inc.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
McCLENDON, J.
This appeal arises from an action for workers' compensation in which the claimant was found totally and permanently disabled. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
In January of 1989, forty-five-year-old Hubert A. Severio, a welder, was working in the course and scope of his employment with J.E. Merit Constructors, Inc. (hereinafter "Merit"), when he injured his back. Mr. Severio subsequently underwent a bilateral lumbar decompression with laminotomy and foraminotomy at L4-5 and L5-S1 on July 26, 1989, and a second surgical decompression on January 14, 1992, to treat ruptured discs in his spine. Since that time, Mr. Severio has received treatment with epidural steroid injections, myoneural injections, and facet/sacroiliac joint blocks in attempts to alleviate his chronic pain.
Mr. Severio originally was paid temporary total disability benefits, but was reclassified to receive supplemental earnings benefits in June of 1994, though the amount of his monthly indemnity benefit remained the same. On July 4, 2000, Merit ceased paying workers' compensation indemnity benefits, claiming the ten-year maximum time period for payment of supplemental earnings benefits had expired.
On September 21, 2000, plaintiff filed a claim for workers' compensation with the Office of Workers' Compensation Administration (hereinafter "OWC"). A hearing was held before an OWC judge on July 18, the date of trial, July 18, 2001, and the matter was taken under advisement. Oral reasons for judgment were given on August 10, 2001 and judgment was signed on September 28, 2001 by the OWC judge, rendering judgment in favor of plaintiff, as follows: finding plaintiff totally and permanently disabled from the date of trial, July 18, 2001, as defined by LSAR.S. *467 23:1221(2) as it read at the time of the January 18, 1989 accident; finding plaintiff entitled to reinstatement of the maximum amount of disability benefits applicable for an accident that occurred on January 18, 1989 from the time benefits were terminated on July 3, 2000; finding plaintiff temporarily and totally disabled through June 1, 1994, following completion of a functional capacity evaluation, and finding plaintiff thereafter entitled to supplemental earnings benefits until the July 18, 2001 trial;[2] finding defendant did not act in an arbitrary and capricious manner in terminating plaintiff's indemnity benefits on July 3, 2000 and rejecting plaintiff's claim for penalties and attorney's fees; finding defendant arbitrarily and capriciously denied medical care to plaintiff but rejecting plaintiff's claim for penalties and attorney's fees as unauthorized under the law; and, granting defendant's claim for recognition of a social security offset as of December 20, 2000.
From this judgment, Merit appealed and on appeal asserts the following assignments of error:
(1) The [OWC] committed legal error in awarding total and permanent disability benefits as of the time of trial.
(2) The [OWC] committed legal error in its alternative finding that supplemental earnings benefits are payable from June 1, 1994 for 520 weeks without a credit for temporary, total disability benefits paid after January 1, 1990.

DISCUSSION AND ANALYSIS
An employee who receives personal injury by accident arising out of and in the course of his employment shall be paid compensation, if not otherwise eliminated from by the workers' compensation provision, by his employer in the amounts, on the conditions, and as designated by 23:1021 et seq. See LSA-R.S. 23:1031. "Accident" means an "unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." LSA-R.S. 23:1021(1).
The employee who claims a right to collect workers' compensation benefits has the burden of proving a work-related accident by a preponderance of the evidence. Bolton v. B E & K Construction, XXXX-XXXX, p. 8 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35; Catchot v. RAMCO Construction, XXXX-XXXX, pp. 2-3 (La.App. 1 Cir. 11/14/01), 818 So.2d 105, 107, citing Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La.1992).
In the instant case, there was no dispute that plaintiff suffered an accident in the course and scope of his employment with the defendant; the issue contested was the extent of plaintiff's disability. "[C]ompensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability *468 of any such employment or self-employment." LSA-R.S. 23:1221(2)(c).[3]
The OWC judge found that Mr. Severio was totally and permanently disabled at the time of the trial and as such entitled to said benefits. The oral reasons given by the OWC judge for this ruling were as follows:
I'm going to address Mr. [Severio's] status first. The first issue is going to be whether or not he is disabled; and if so, in what category, or in what capacity. I find that Mr. [Severio] is permanently and totally disabled. I base this on not only his physical disabilities, as found in his medical records, but also I am finding under the 1226(D) [s]tatute in place at the time of his accident ___ and I'm reading the [s]tatute as it was in 1989 ___ I find that there is no reasonable probability that with training or education he could be rehabilitated to where he could achieve suitable gainful employment. I find that it's not in his best interest to try to undertake that in light of the fact that it would take so much to get him there and because of his physical condition I don't think that he could stand it, and I don't think that he could do it. He has a third grade education; formally, a third grade education. He can write very little. The testimony I got is pretty much his name, and he cannot read. He can read very little. He cannot read a newspaper. He can read signs, but not sit down and be able to read a book or read anything.
He has been very lucky in that he has been able to work in very heavy labor manual jobs which have not required him to do much in the way of reading. He has been a welder. He has been a logger. He's been a farmer. He worked on a waterwell rig. These were all labor intensive jobs and he didn't have to do much in the way of reading. All he had to do was have a good strong body and do what he was told. To be a welder it requires him to do measurements, but it is still a very physically intensive job. His restrictions now are so severe in terms of what he physically cannot do, that I am of the opinion that unless he was a scholar, someone who could do pretty much sedentary scholarly type work, and even then I think he would have a hard time because he cannot, based upon his medical information ___ and the day of the trial he wiggled around here all day. He had to stand up or sit down and move around. As the voc-rehab person stated it is true I did not see him lay down at any time during the trial, but I did not expect him to ___ he is very much a gentleman [sic] type person. I would not have expected him to decide in my Courtroom to lay down on the floor even if he felt that he should for his own comfort to try to alleviate pain; and he had just had an injection, injections that he has to have every two to three months, however it had not really had a chance to take effect. Yes, he can drive very short distances; but quite frankly, everybody is in agreement that he really shouldn't be driving because of the narcotics that he is on for the pain, the medication that he is on for the pain. He is in better condition than some people I have seen; but I still do not, in terms of his ability to use his hands, he can use his hands, but I don't think his condition would allow him to sit at a computer or sit at a desk for very long, and I cannot imagine him being able to do work when he can't *469 sit still long enough to complete a task long enough for 20 minutes or so at a time, and then get up move around, try to come back to it, and any employer who tried to hire him would have to be cognizant of the fact that as his pain tolerance grows and getting closer to the need for the time for the injection he is going to be out, and then the injection is going to have him out for 24 hours, no driving, no going anywhere for 24 hours after the injection. So, if the next day is a workday, he's got to be off that day. There are just too many impediments in my mind to his being able to [be] employable in any manner. This is especially based on not only physical condition but also his abilities, his lack of education and lack of training for anything other than heavy manual labor.
. . . .
He has a very bad back injury. The medication that he has been on has been causing him problems with his stomach. He has had gallbladder problems, and has stomach problems as a result of the medication. He is getting steroid injections [bi]-monthly, sometimes trimonthly, in order to continue to live on a daily basis and even do what little he does at home which is not much according to his wife and Mr. [Severio]. He really can't do much. Even if he tries to assist in the yard for 15 or 20 minutes, that's it. That's a wrap. He's done for the day. That is not somebody who is employable. Sure, the physicians gave him restrictions according to what his physical abilities are, and that's not taking into consideration the pain. It's what he physically may be able to do, and you put that together with the pain and I can't escape it. Sure, if you read the jurisprudence it will say that they should have to be able to work in pain; and a little bit of pain, anybody can work in....
But excruciating, intolerable pain, that requires you to get epidural injections on a bi to trimonthly basis that requires you to stay on medication all the time and won't allow you to function is an unemployable situation. It is a Permanent and Total Disability situation, especially when you put that together with his lack of education....
On appeal, the factual findings of an OWC judge are subject to the same standard of review as in other cases; i.e., a trial court's finding of fact may not be set aside on appeal unless there is no reasonable factual basis for the finding and the finding is clearly wrong (manifestly erroneous). See Bolton v. B E & K Construction, XXXX-XXXX at p. 7, 822 So.2d at 35; McCray v. Delta Industries, Inc., XXXX-XXXX, p. 4 (La. App. 1 Cir. 9/28/01), 809 So.2d 265, 269. See also Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Bolton v. B E & K Construction, XXXX-XXXX at p. 7, 822 So.2d at 35, citing Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990).
The finding of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. Brown v. Churchill & Thibaut, Inc., 93-1216, p. 7 *470 (La.App. 1 Cir. 5/20/94), 637 So.2d 764, 768.
In Comeaux v. City of Crowley, XXXX-XXXX (La.7/3/01), 793 So.2d 1215, the supreme court applied a "totality of the circumstances" test in determining entitlement to permanent and total disability, finding a fifty-five-year-old man permanently and totally disabled when his physical restriction to sedentary activities combined with a failed attempt to rehabilitate or re-train the claimant in accordance with LSA-R.S. 23:1226 rendered the claimant unemployable. In so holding, the court stated that both the physical ability of the claimant to function in the workplace and the employee's lack of ability to be educated or re-trained should be considered in deciding whether he had discharged his burden of proving by clear and convincing evidence permanent and total disability. Comeaux v. City of Crowley, XXXX-XXXX at p. 15, 793 So.2d at 1224.
In France v. A & M Wood Company, 566 So.2d 106 (La.App. 2 Cir.1990), the Second Circuit likewise found permanent, total disability had been established for a forty-nine-year-old manual laborer with a sixth-grade education, who was able to read and write "a little." As a result of his injury, the claimant was unable to remain sitting or standing for very long, was restricted from lifting anything substantial, had to change his physical position frequently, and took medication every day simply "to live," according to his doctor. The France court found it appropriate to consider not only the extent of the claimant's physical disability but also his inability to be rehabilitated. See France v. A & M Wood Company, 566 So.2d at 110-11.
At the trial of this matter, the plaintiff testified extensively as to the amount of pain which he endures on a daily basis and that he can attain a measure of relief only from the periodic injections that he undergoes with Dr. Christopher Lew. Mr. Severio testified that the injections for pain do not alleviate all of his pain and are not frequent enough to prevent the return of the majority of his symptoms in the interim between injections. The record further established that Mr. Severio had only a third-grade education, was barely able to read and write, and was unable to perform any job that required reading or writing. In the past, he had only worked in manual labor jobs, such as, farming, logging, drilling, or welding. Further, the record established that Mr. Severio attempted adult literacy classes on his own after the accident, but was not successful. Mr. Severio's testimony was corroborated by that of his wife and was uncontradicted in this regard.
The testimony of defendant's vocational rehabilitation consultants only established that efforts were made to ascertain Mr. Severio's physical and educational status, but no testimony was produced that any attempt was made to rehabilitate or retrain Mr. Severio over the approximate twelve-year period from the date of his injury until the date of trial. Mr. Severio was classified as being capable of only sedentary to light work and then with numerous restrictions, such as not sitting for more than thirty minutes at a time.
Dr. Lew's July 16, 2001 status report stated that Mr. Severio had post lumbar laminectomy pain syndrome with components of axial and radicular pain, which he classified as a chronic pain syndrome arising from post-traumatic degenerative spinal changes. Dr. Lew stated that this condition was permanent in the sense that there was no curative intervention available, but that plaintiff's treatment plan consisted of: activity modification (avoidance of activities that worsened pain and continuation of activities that maintained flexibility and basic strength); medications *471 (analgesic opiate plus medications to control side effects); and injection therapy. Dr. Lew reported that Mr. Severio was restricted from bending, climbing, crawling, crouching, and stooping. He further stated that prolonged standing, sitting, and walking must be limited to thirty minutes. Because Mr. Severio was taking opiate analgesics intermittently, he was restricted in his ability to drive vocationally. Dr. Lew also stated that Mr. Severio could lift and carry up to ten pounds frequently and twenty pounds rarely, but that he was unable to lift greater than twenty pounds. Mr. Severio was permitted to use his upper extremities for repetitive movement, though not his lower extremities, but was restricted from prolonged use of his upper extremities above the shoulders, though occasional reaching was allowed. Dr. Lew concluded that there was a possibility that Mr. Severio could tolerate part-time work at a sedentary position with restrictions and with allowances for frequent position changes.
As set forth in LSA-R.S. 23:1226(D), before a claimant is found to be permanently and totally disabled, it shall be determined "whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education." LSA-R.S. 23:1226(D); Comeaux v. City of Crowley, XXXX-XXXX at pp. 5-6, 793 So.2d at 1218.
After a thorough review of the evidence presented in the instant case, we are unable to say the OWC judge erred in determining that, based on Mr. Severio's physical restrictions, the failed attempt at rehabilitation and/or re-training, and his limited education and inability to be educated, he was permanently and totally disabled. We note, as did the OWC judge and the supreme court in Comeaux v. City of Crowley, XXXX-XXXX at p. 15 n. 10, 793 So.2d at 1224 n. 10, that a classification of permanent, total disability can always be modified should circumstances change.
Having disposed of the appeal on this basis, we find it unnecessary to address defendant/appellant's remaining assignment of error.

CONCLUSION
For the reasons assigned herein, the judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are to be borne by defendant/appellant herein, J.E. Merit Constructors, Inc.
AFFIRMED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] With respect to this ruling the OWC judge found alternatively that "[i]n the event it is deemed by the Court of Appeal that the claimant was not totally and permanently disabled as of the date of trial, in that event the court awards supplemental earnings benefits from June 2, 1994, for a period of 520 weeks, without a credit for temporary, total disability benefits paid before June 1, 1994."
[3] The burden of proof for permanent, total disability has not changed under LSA-R.S. 23:1221 since the time of Mr. Severio's 1989 accident, although we note that, for temporary total disability, the standard of proof in 1989 was by a preponderance of the evidence.