PETTIGREW, J.
lain this workers’ compensation dispute, Industrial Metal Recyclers, Inc. (“Industrial”) and its insurer, The Gray Insurance Company (“Gray”), appeal a judgment of the Office of Workers’ Compensation (“OWC”) in favor of claimant, Maurice Vil-lar. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On July 18, 2000, Mr. Villar was injured in the course and scope of his employment as a pipe fitter with Industrial when a large steel beam fell on him, crushing his left leg against a concrete column and resulting in the partial amputation of his left leg. Mr. Villar was 61 years old when the accident occurred. He has not worked since his accident. Subsequent to the incident, temporary total disability benefits were initiated.
According to the record, Gray hired a vocational rehabilitation counselor in 2000 to meet with Mr. Villar and evaluate his return-to-work options. Mr. Villar’s treating physician, Dr. Lawrence J. Messina, set restrictions on Mr. Villar such that he could only perform sedentary part-time work. In February 2002, Mr. Villar’s indemnity benefits were converted to supplemental earning benefits in the amount of $384.00 per week, which he was paid every two weeks until July 2010.
After his benefits were terminated, Mr. Villar filed a disputed claim for compensation, alleging that he was entitled to permanent total disability benefits and that *374 his benefits were arbitrarily and capriciously terminated. Prior to trial, Mr. Vil-lar was reevaluated by a vocational counselor who reported that Mr. Villar was completely unemployable due to his amputated leg, his advanced age of 71, his inability to perform prior occupations, the lack of transferable skills, and the physician-assigned sedentary part-time work restriction. The matter proceeded to trial on October 3, 2011, at which time the parties stipulated to the date of the accident, July 18, 2000, the fact that Mr. Vil-lar’s left leg was partially amputated as a result of the accident, that his average weekly wage was $576.00 with an indemnity rate of $384.00, and that Mr. Villar received temporary total disability benefits and supplemental earning benefits until July 18, 2010. The narrow issues presented to the OWC were whether Mr. Villar was permanently and [ stotally disabled as a result of the July 18, 2000 accident, and, if so, whether Industrial’s termination of his benefits was arbitrary and capricious such that penalties and attorney fees are warranted. After listening to the testimony of the witnesses at trial and reviewing the applicable law and documentary evidence in the record, the OWC hearing officer rendered judgment from the bench in favor of Mr. Villar and against Industrial and Gray. The hearing officer found that Mr. Villar was permanently and totally disabled and that Mr. Villar met his burden of proving that he was entitled to permanent and total disability benefits. The hearing officer further found that Mr. Villar was unemployable. The hearing officer also concluded that Industrial arbitrarily and capriciously terminated Mr. Villar’s benefits without having done any kind of investigation to determine if he was permanently and totally disabled and awarded $15,000.00 in attorney fees and costs. A judgment in accordance with these findings was signed by the OWC hearing officer on October 31, 2011, as follows:
1. The [OWC hearing officer] finds that the claimant is permanently totally disabled under La. R.S. 23:1221(2)(c) from July 19, 2010 to date.
2. The [OWC hearing officer] finds that there is no reasonable probability that, with appropriate training or education, Mr. Villar may be rehabilitated to the extent that he can achieve suitable gainful employment, and it is therefore not in the best interest of the claimant to undertake such training or education.
3. The [OWC hearing officer] finds that the defendants were arbitrary and capricious in the termination of indemnity benefits after 520 weeks without properly investigating Mr. Villar’s disability status as of the time of the termination.
4. The [OWC hearing officer] awards $15,000[.00] in attorney fees for the arbitrary and capricious termination of Mr. Villar’s indemnity benefits.
5. Judicial interest is awarded from the date each installment became due payable from July 19, 2010 to date at the interest rate in effect at the time the 1008 was filed which was 3.75%.
6. Interest is due on the attorney fee at the rate of 3.75% from the date of the award.
7. The [OWC hearing officer] awards Thomas Mungall an expert witness fee in the amount of $135[.00] for his trial testimony.
8. All costs of the proceeding in the amount of $1,490.36 are the responsibility of the defendant.
This appeal by Industrial and Gray followed.
14After considering the October 31, 2011. judgment and examining the record, this *375 court issued an interim order on September 27, 2012, finding that although the OWC hearing officer had determined that Mr. Villar was permanently and totally disabled and had met his burden of proving he was entitled to benefits, the judgment failed to include an award of said benefits. Thus, we remanded the case to the OWC for the limited purpose of having the hearing officer sign an amended judgment that was final and appealable. See Johnson v. Mount Pilgrim Baptist Church, 2005-0337, pp. 2-3 (La.App. 1 Cir. 3/24/06), 934 So.2d 66, 67; Carter v. Williamson Eye Center, 2001-2016, p. 3 (La. App. 1 Cir. 11/27/02), 837 So.2d 43, 44.
On October 5, 2012, the OWC hearing officer signed an amended judgment, which for the most part tracked the language of the original judgment, with the exception of the issues that this court had instructed the OWC to correct. The new language in the October 5, 2012 judgment is as follows:
1. The [OWC hearing officer] finds that the claimant is permanently totally disabled under La. R.S. 23:1221(2)(c) from July 19, 2010 to date at the rate of $384[.00] a week.
2. The [OWC hearing officer] finds that the claimant is entitled to $24,192.00 in past due indemnity benefit[s] totaling benefits owed from July 19, 2010 until October 3, 2011, and continuing thereafter at the rate of $384[.00] a week.
The remainder of the original October 31, 2011 judgment was unchanged.
ISSUES FOR REVIEW
On appeal, Industrial and Gray assign the following specifications of error:
1. The [OWC hearing officer] manifestly erred in finding that the claimant is permanently and totally disabled.
2. The [OWC hearing officer] erred in concluding that there was no reasonable probability that with appropriate training or education that claimant may be rehabilitated.
3. The [OWC hearing officer] manifestly erred in finding that defendants arbitrarily and capriciously terminated benefits on July 19 2010.
DISABILITY STATUS
Whether a claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. Allman v. Washington Parish Police Jury, 2004-0600, p. 3 (La.App. 1 Cir. 3/24/05), 907 So.2d 86, 88. Factual findings in a workers’ compensation case are subject to the manifest error-clearly wrong standard of review. McCray v. Delta Industries, Inc., 2000-1694, p. 4 (La.App. 1 Cir. 9/28/01), 809 So.2d 265, 269. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. Thus, “[if] the [fact finder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Bolton v. B E & K Const., 2001-0486, p. 7 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35.
The finding of disability within the framework of the workers’ compensation *376 law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. Severio v. J.E. Merit Constructors, Inc., 2002-0359, p. 7 (La.App. 1 Cir. 2/14/03), 845 So.2d 465, 469.
As set forth in La. R.S. 23:1221(2)(c), when an employee is not engaged in any employment or self-employment, compensation for permanent total disability “shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment.” Moreover, before a claimant is found to be permanently and totally disabled, it shall be determined “whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment |fiand whether it is in the best interest of such individual to undertake such training or education.” La. R.S. 23:1226(D). Sev-erio, 2002-0359 at 10, 845 So.2d at 471.
After hearing from the witnesses and considering the documentary evidence in the record, the OWC hearing officer made the following findings concerning Mr. Vil-lar’s disability status:
The first question is whether ... Mr. Villar is permanently and totally disabled. [I am] of the opinion that under [La. R.S. 23:1221(2)(c) ], Mr. Villar is permanently and totally disabled at this point in time. The standard for that is that when an employee is not engaged in employment, compensation for permanently and total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment.
Now, there is a caveat to that found in [La. R.S. 23:1226], the rehab statute, [La. R.S. 23:1226(D) ]. You have to get through that rehab statute before you get to permanent and total. And in D, we have, “Before a claimant is found to be permanently and totally disabled, it shall be determined whether there is a reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether [it is] in the best interest of such an individual to undertake such training [or] education.” That is the crux of the matter.
First I will start by saying that [I] found Mr. Villar very credible, he’s a very personable, upfront gentleman, I found his testimony completely credible throughout, there was absolutely no dispersions cast upon his credibility in any way. I think he is sincere in that he would like to work and at a point in time not too long after he lost his leg he was seeking to try to find some kind of part-time employment but in his own words, there seemed to be road blocks at every turn. His biggest problem is not the leg as much as it is the age at which he lost the leg, and it’s not the loss of the leg alone but the age at which he lost the leg. Losing his leg at age 61 is pretty devastating to his employability. Although he has a high school education, which is the entry level for most positions, at 72 or 71, the age that he was when his benefits were terminated ... I am clearly convinced that no employer *377 would hire him at age 72 with an amputated leg and provide him with sedentary duty on a part-time basis that could present him with enough money to be suitably gainfully employed.
The definition is found in Title 40 of the Administrative Code for Suitable Employment, “Employment that is reasonably attainable and which offers an opportunity to restore the individual as soon as practical and nearly as possible to his average earning at the time of his injury.”
There is no way that, like short of a job like ours, mine and the attorneys here, or a professional job, that Mr. Villar could earn $576[.00] a week on a part-time basis at a sedentary job....
So I find that the claimant has met his burden of proving clearly and convincingly that he’s entitled to permanent and total disability benefits.
|7Pr. Messina set the restrictions, sedentary duty part-time only, and with that restriction and his age and his high school education, the fact that all of the jobs he had before were in the manual labor, heavy manual labor type situation, there were some skills there. And I agree with Ms. Seylar, there are some transferable skills, but she failed to show me any job as of the time that they terminated benefits that he could have done. Now, if they’re out there, the defendant failed to show me that they are.
When Ms. Seylar did her vocational rehabilitation it was ten years ago. At that time there were some jobs that he possibly could have done and if they had really pushed him in that direction ten years ago, perhaps we wouldn’t be here now. I think that the vocational rehabilitation ball was dropped ten years ago.
He showed some interest in the computer training, he showed some interest in small engine training and I think that if she, Ms. Seylar, had kept in touch with him and if the employer had pushed him to look for those jobs, had provided him with names and places of jobs, go find these jobs, provided him with 1020 forms, fill these out every month, you’re expected to find jobs and actually followed up, did he apply.
Everybody knows the step-ball change that we go through now with vocational rehabilitation under the supplemental earnings benefits category, and that is, okay, employee can’t return to his old job, his employer does not want to create a job for him, he’s got severe limitations, let’s find jobs for him, give him the jobs, but you’ve got to give him the places where the jobs are too. And there was absolutely no evidence and she couldn’t remember, I felt so sorry for Ms. Seylar because she lost part of her file, but it was her testimony she couldn’t remember whether she gave him the actual places for the jobs, but they did have discussion about the types of jobs and Mr. Villar, to his credit, it’s been ten years, he didn’t have any documentation he had ever gotten from her, he didn’t remember talking about general categories of jobs.
And he went out and looked, he actually talked to the employer, he went and talked to some small shop owners there in his area, he looked into the possibility of employment but Ms. Seylar never presented him with jobs and then pushed him in that way, and by that I mean, look, if he doesn’t go out and apply for these jobs, then go ahead and reduce benefits based upon the lowest paying job that you’ve got and force the issue. I mean, that’s what — that’s the way it should work. And then the claimant would have to come and show me that he did try to seek these jobs, *378 and we all know how that goes, but none of this occurred.
They talked about jobs, talked about doing something and then let it go. And now ten years later, we cannot use that ten year old — the ten year old ability as being actual jobs today or even last year when benefits were terminated.
The best thing I would have suggested is that before benefits were running out, say in 2010, 2009, get back on the labor market survey and see what you can do, provide him with some openings to see what could have been done and go forward with it from that side.
Under Mr. Mungall’s assessment, and I have to say I heartily agree, the fact that he can’t work an eight hour day, he’s 72 years old now with a |shigh school education, puts him at a severe detriment in this job market with college students coming out and having trouble finding jobs. He would be competing for these cashier and security guard jobs that he might physically be able to do and be in his educational category with high school kids and college kids right now who are having trouble finding a job. And as much as we like to believe that he’s not going to be discriminated against because of his disability or discriminated against because of his age, I just don’t see them hiring him over someone younger who can take that job.
So I am of the opinion that he is unemployable due to his age, the fact that he only has a high school education, he has no skills, clerical type skills and he’s lost his leg and he is limited to part-time employment.
Following an extensive review of the record and exhibits in this matter, we are unable to say that the OWC hearing officer erred in determining that based on Mr. Villar’s physical restrictions, the failed attempt at vocational rehabilitation, his limited education, and lack of transferable skills, he is permanently and totally disabled and entitled to benefits. The hearing officer made specific findings that Mr. Villar was a credible witness and that he was unemployable. The OWC hearing officer’s judgment concerning the finding of permanent and total disability and the award of benefits for same is reasonable and supported by the record.
AWARD OF ATTORNEY FEES
The OWC hearing officer found that Industrial and Gray were arbitrary and capricious in terminating Mr. Villar’s benefits and awarded him $15,000.00 in attorney fees, noting as follows:
[I also find] that in light of the fact that when benefits were terminated and SEB benefits had run out, the insurer terminated benefits without having done any kind of investigation to determine if he was permanently and totally disabled.
You cannot just rely on the fact that Dr. Messina says he can return to work on a part-time basis. The question can’t stop there. Yes, that means that physically there’s something out there that he could probably do, you have to find it, and you have to find an employer who’s willing to hire him or that there are jobs out there that he could do, that he could become gainfully employed for. You can’t just terminate benefits because he’s in the SEB category as far as the doctor is concerned, because it is not just a medical question, it is a legal question, the category of benefits. And once you run out of supplemental earning benefits, the logical thing to do would have been to look at it for permanent and total disability. Especially once the 1008 was filed, updated information should have been acquired immediately to see if he should have been declared permanent and total. And I *379 think had Ms. Seylar started looking again, she would |3have found that she had trouble finding — if she actually talked to employers, finding someone who would have employed him.
So [I find] that they did arbitrarily and capriciously terminate benefits. There is no penalty for that, there is just an attorney’s fee option.[1] [I award $15,000.00] in attorney’s fees and costs,
The OWC hearing officer’s determination of whether an employer or insurer should be cast with attorney fees and penalties in a workers’ compensation action is essentially a question of fact subject to the manifest error or clearly wrong standard of review. Frith v. Riverwood, Inc., 2004-1086, p. 12 (La.1/19/05), 892 So.2d 7, 15. Statutes providing for penalties and attorney fees are penal in nature and must be strictly construed. Life Flight of New Orleans v. Homrighausen, 2005-2538, p. 9 (La.App. 1st Cir. 12/28/06), 952 So.2d 45, 52, writ denied, 2007-0558 (La.5/4/07), 956 So.2d 615. Based on our review of the record herein, we cannot say the OWC hearing officer was clearly wrong in finding that Industrial and Gray were arbitrary and capricious in terminating Mr. Villar’s benefits. Accordingly, we affirm the award of $15,000.00 in attorney fees to Mr. Villar.
DECREE
For the above and foregoing reasons, we affirm the OWC hearing officer’s judgment in all respects and assess all costs associated with this appeal against appellants, Industrial Metal Recyclers, Inc. and The Gray Insurance Company. AFFIRMED.
McDONALD, J., concurs.

. Pursuant to La. R.S. 23:1201(1), penalties are recoverable for the arbitrary and capricious discontinuance of benefits as follows:
I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and-a reasonable attorney fee for the prosecution and collection of such claims.
Although we note legal error in the OWC hearing officer's failure to address the penalty portion of La. R.S. 23:1201 for the arbitrary and capricious termination of Mr. Villar’s benefits, this issue is not before the court on appeal as Mr. Villar did not appeal or answer the appeal. See La. Code Civ. P. art. 2133; Augustus v. St. Mary Parish School Bd., 95-2498, p. 16 (La.App. 1 Cir. 6/28/96), 676 So.2d 1144, 1156.