STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 CA 0416

TERRY MCCAIN

VERSUS

LEWIS COMPANIES, INC. AND LUBA CASUALTY INSURANCE
COMPANY

JUDGMENT RENDERED: **FEB 0 6 2020**

* * * * * * *

Appealed from the State of Louisiana
Louisiana Workforce Commission
Office of Workers' Compensation • District 05
Docket Number 17-03030

Pamela Moses-Laramore, Workers' Compensation Judge Presiding

* * * * * * *

Stephen W. Brooks, Jr.
Richard J. Voelker
Covington, Louisiana

ATTORNEYS FOR APPELLANTS,
DEFENDANTS/PLAINTIFFS-IN-
RECONVENTION—Lewis
Companies, Inc. and Luba
Casualty Insurance Company


J. David Smith
Baton Rouge, Louisiana

ATTORNEY FOR APPELLEE,
CLAIMANT/DEFENDANT-IN-
RECONVENTION—Terry McCain

* * * * * * *

BEFORE: MCCLENDON, WELCH, AND HOLDRIDGE, JJ.

**WELCH, J.**

The defendants, Lewis Companies, Inc. and LUBA Casualty Insurance Company ("LUBA"), appeal a final judgment of the Office of Workers' Compensation ("OWC") that awarded the claimant, Terry McCain, permanent total disability ("PTD") benefits and non-skilled personal care attendant services for up to ten hours a day, five days a week. The defendants also appeal the OWC's interlocutory judgment denying their dilatory exception raising the objection of prematurity and peremptory exception raising the objections of no right of action and no cause of action, regarding whether the claimant's request for home health care was subject to the OWC's Medical Treatment Guidelines. For the following reasons, we vacate the OWC's judgments, in part, otherwise affirm, and remand.

## FACTS AND PROCEDURAL HISTORY

On February 22, 2011, while in the course and scope of his employment with Lewis Companies, Inc., Mr. McCain was cutting a tree limb, when he fell from a ladder, approximately ten feet, headfirst onto a concrete sidewalk. He suffered a traumatic brain injury (subdural hematoma with subarachnoid hemorrhage in the right frontal lobe), blowout fracture of his thoracic spine, complete rupture of his rotator cuff, and other orthopedic injuries. The defendants paid medical and indemnity benefits (at the rate of $579.00 per week) to and on behalf of Mr. McCain.

Mr. McCain filed a disputed claim for compensation Form LWC-WC-1008 on May 18, 2017, requesting attendant care/personal care services (*i.e.*, a non-skilled sitter) as recommended by his treating neuropsychologist, Dr. Paul Dammers; PTD benefits, temporary total disability ("TTD") benefits, or in the alternative, supplemental earnings benefits ("SEB"); and objecting to the appointment of a state independent medical examination ("IME") to address

disputed issues between Mr. McCain's treating neurologist, Dr. Joseph Acosta, and LUBA's second medical opinion ("SMO") neurologist, Dr. Steven Zuckerman.[1]

The defendants filed an answer, reconventional demand,[2] and raised a dilatory exception of prematurity, or in the alternative, a peremptory exception of no right and no cause of action. The defendants argued that Mr. McCain's request for attendant care/personal care services was subject to the OWC Medical Treatment Guidelines. Accordingly, the defendants contended that Mr. McCain's medical provider was required to obtain authorization for the attendant care/personal care services by submitting a Form LWC-WC-1010[3] to Lewis Companies' workers' compensation insurance carrier, LUBA. Then, if LUBA denied the request, the defendants averred that Mr. McCain's medical provider could have sought relief with the OWC Medical Director through the filing of a Form LWC-WC-1009.[4] Once the Medical Director made a decision regarding the Form LWC-WC-1009, any party aggrieved by the OWC Medical Director's decision could have filed suit with the OWC by filing a Form LWC-WC-1008.[5]

---

[1] Mr. McCain also moved to quash the appointment of a state IME. The defendants objected. The workers' compensation judge ("WCJ") granted the motion and converted it to an IME pursuant to La. R.S. 23:1124.1, which provides:

> Neither the claimant nor the respondent in hearing before the workers' compensation judge shall be permitted to introduce the testimony of more than two physicians where the evidence of any additional physician would be cumulative testimony. However, the workers' compensation judge, on his own motion, may order that any claimant appearing before it be examined by other physicians.

The WCJ ordered that Mr. McCain would undergo an IME with neurologist Dr. Arthur Neil Smith, limited to Mr. McCain's capacity to work.

[2] The defendants sought judgment in their favor, against Mr. McCain, in the amount of $1,000.00 plus interest, costs, and attorney's fees, for a fee incurred due to the alleged late cancellation of the IME. Mr. McCain excepted to the defendants' reconventional demand, arguing they had no cause of action and that there was no subject matter jurisdiction under the Workers' Compensation Act. The WCJ sustained Mr. McCain's exceptions and dismissed the defendants' reconventional demand, with prejudice, in a judgment signed on February 8, 2018.

[3] Form LWC-WC-1010 is the "Request of Authorization/Carrier or Self-Insured Employer Response."

[4] Form LWC-WC-1009 is the "Disputed Claim for Medical Treatment."

[5] Form LWC-WC-1008 is the "Disputed Claim for Compensation."

The defendants averred that because Mr. McCain failed to comply with the OWC Medical Treatment Guidelines in obtaining authorization for the requested attendant care/personal care services: 1) his Form LWC-WC-1008 was therefore premature; 2) he failed to state a cause of action against the defendants; 3) had no right of action against the defendants to address any dispute regarding treatment; and 4) had no right of action because there was no decision of the OWC Medical Director to appeal.

Mr. McCain opposed the defendants' exceptions, arguing that requests for attendant care/personal care services are exempted from the OWC Medical Treatment Guidelines; that there are no Medical Treatment Guidelines for brain injuries; and that a sitter is "nonmedical treatment" to which the OWC Medical Treatment Guidelines do not apply. Therefore, Mr. McCain argued that he had no requirement to comply with the OWC Medical Treatment Guidelines prior to filing a Form LWC-WC-1008. Mr. McCain also contended that his treating neuropsychologist, Dr. Dammers, did request that LUBA approve a sitter for Mr. McCain at least three times, including by filing a Form LWC-WC-1010, which he claimed LUBA denied. Mr. McCain further alleged that LUBA's own SMO doctor determined that a sitter was necessary and appropriate, and that LUBA cannot request utilization review or the OWC Medical Treatment Guidelines to dispute its own doctor's recommendations.

Following a hearing, the workers' compensation judge ("WCJ") denied the defendants' exceptions of prematurity, no right of action, and no cause of action, in a judgment signed on February 8, 2018.

The matter proceeded to trial on August 9, 2018, for a determination of the nature, extent, and duration of Mr. McCain's injuries and disabilities; his entitlement to PTD benefits; and his entitlement to penalties and attorney's fees for the defendants' alleged arbitrary, capricious, and/or unreasonable failure to

4

approve treatment and services under the Workers' Compensation Act. At the conclusion of trial, the WCJ took the matter under advisement.

On August 24, 2018, the WCJ made a ruling and gave oral reasons, finding that Mr. McCain was permanently and totally disabled and unemployable, and thus, entitled to PTD benefits. The WCJ further ruled that Mr. McCain was entitled to attendant care/personal care services in the form of a non-skilled sitter, ordering that LUBA provide a personal care assistant to Mr. McCain for up to ten hours a day, five days a week. The WCJ declined to award Mr. McCain penalties or attorney's fees, finding that the defendants were not unreasonable or arbitrary or capricious for seeking a determination from the WCJ as to whether a request for non-skilled personal care attendant services was subject to the OWC Medical Treatment Guidelines.

The WCJ signed a judgment in accordance with her ruling on September 18, 2018, which decreed as follows:

> **IT IS ORDERED, ADJUDGED, AND DECREED** there be judgment in favor of the claimant, Terry McCain, and against the defendants, Lewis Companies, Inc. and Luba Casualty Insurance Company, awarding Permanent Total Disability Benefits from date of trial and continuing under the Act as proven by clear and convincing evidence to be the direct result of Traumatic Brain Injury combined with other physical injuries sustained in the work accident on February 22, 2011.

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** there be judgment in favor of the claimant, Terry McCain, and against the defendants, Lewis Companies, Inc. and Luba Casualty Insurance Company, awarding non-skilled Personal Care Attendant services, for up to 10 hours per day, five days per week; finding this prescribed care to be reasonable and necessary medical treatment under the Act as a result of the claimant's Traumatic Brain Injury.

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** the claimant is not awarded penalties or attorney's fees, as the defendants' denial of non-skilled Personal Care Attendant services was not

5

arbitrary or capricious and each party is to bear their own costs.

The defendants now appeal the WCJ's September 18, 2018 final judgment awarding Mr. McCain PTD benefits and non-skilled attendant care/personal care services for up to ten hours a day, five days a week.

The defendants also appeal the WCJ's February 8, 2018 interlocutory judgment denying their dilatory exception raising the objection of prematurity, and alternative peremptory exception raising the objections of no right and no cause of action, regarding whether Mr. McCain's request for attendant care/personal care services was subject to the OWC Medical Treatment Guidelines.[6]

## LAW AND DISCUSSION

### *Assignment of Error No. 1: PTD Benefits*

In their first assignment of error, the defendants allege the WCJ erred in finding that Mr. McCain was permanently and totally disabled, and therefore entitled to PTD benefits under La. R.S. 23:1221.

Factual findings in a workers' compensation case are subject to the manifest error-clearly wrong standard of review. **McCray v. Delta Indus., Inc.,** 2000-1694 (La. App. 1st Cir. 9/28/01), 809 So. 2d 265, 269. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of

---

[6] Appellate courts have a duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue as we are obligated to recognize any lack of jurisdiction if it exists. This court's appellate jurisdiction extends to final judgments. La. C.C.P. arts. 1841 and 2083; **Quality Envtl. Processes, Inc. v. Energy Dev. Corp.,** 2016-0171 (La. App. 1st Cir. 4/12/17), 218 So. 3d 1045, 1052-53. The overruling of a peremptory exception or a dilatory exception is an interlocutory ruling that is not appealable. See La. C.C.P. arts. 1841 and 2083(C); see also **Bennett v. Arkansas Blue Cross Blue Shield,** 2005-1714 (La. App. 1st Cir. 9/15/06), 943 So. 2d 1124, 1126, and **Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary,** 2001-1952 (La. App. 1st Cir. 12/28/01), 805 So. 2d 413, 416 n.3. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse and prejudicial interlocutory judgments, in addition to the review of the final judgment. **Robertson v. Doug Ashy Bldg. Materials, Inc.,** 2010-1552 (La. App. 1st Cir. 10/4/11), 77 So. 3d 339, 345 n.11, writs denied, 2011-2468, 2011-2430 (La. 1/13/12), 77 So. 3d 972, 973. The defendants appeal the September 18, 2018 judgment rendered in favor of the claimant, which is a final, appealable judgment. See La. C.C.P. arts. 1841 and 2083(A). Therefore, it is appropriate for us to review the OWC's February 8, 2018 judgment overruling the defendants' objections of prematurity, no right of action, and no cause of action in conjunction with the appeal of the final judgment. See **Robertson,** 77 So. 3d at 345 n.11.

6

fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. **Banks v. Indus. Roofing & Sheet Metal Works, Inc.**, 96-2840 (La. 7/1/97), 696 So. 2d 551, 556.

A workers' compensation claimant who seeks PTD benefits must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of the nature or character of the work. La. R.S. 23:1221(2)(c). In the absence of such evidence, the claimant's demand for PTD benefits fails. See **Delatte v. Washington Par. Sch. Bd.**, 2018-0575 (La. App. 1st Cir. 12/21/18), 268 So. 3d 340, 344.

The finding of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately, the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. **Severio v. J.E. Merit Constructors, Inc.**, 2002-0359 (La. App. 1st Cir. 2/14/03), 845 So. 2d 465, 469.

After hearing from the witnesses and considering the documentary evidence, the WCJ made the following findings concerning Mr. McCain's disability status:

> The Court finds that Mr. McCain is permanently and totally disabled....
>
> [P]hysically, Mr. McCain could do sedentary-duty work, but because of his traumatic brain injury, his change in his character, and his inappropriate behavior and cognitive malfunction makes him unemployable.
>
> I found all of the witnesses credible. Mr. McCain is 65 years old, and he is a very nice, affable man, and he's a [knowledgeable] carpenter. And he is known by his family and friends to be a jokester type, somebody who would cut up and -- but what has happened now, since he had this traumatic brain injury, which is -- nobody, nobody, no doctor has disputed that he has a

7

traumatic brain injury, that he has damage [to] his frontal lobe; it's reported in all the testing. All of the physicians agree that that is there....

[...]

[Dr. Thomas G. Mungall, a vocational rehabilitation expert,] stated that [Mr. McCain has] an 11th grade education; he's too mentally and cognitively impaired to be able to earn a living, that he is unemployable on a psychological level; that he has zero earning capacity, especially, in light...of the fact that even on a physical level, his physicians think he could do sedentary work. Dr. [Megan Ciotta, the SMO neuropsychologist] found that...[Mr. McCain's] even fine and gross manual motor skills are impaired. So even on a physical level, sedentary duty with impairment of your manual motor skills severely restricts your abilities to find employment, as well.

[...]

Dr. [Neal] Smith, the Court's IME, stated -- and he saw him this year -- that he is not mentally able to be retrained, that he cannot return to work, not even in a sedentary capacity, due to his mental impairment.

Dr. [Megan Ciotta who] saw him in 2015 agreed he had the traumatic brain injury. She is the...SMO [neuropsychologist and]...found no exaggeration indicators. She found structural damage with permanent function and a decline of his cognitive function. Her statement was that return-to-work may not be possible, but he could increase his daily function if his symptoms were addressed a little differently. So in my mind, that is her way of saying that he can't return to work.

Dr. [J. George] Jiha is more pronounced. He is the...SMO in pain management....On all issues, he would defer to the treating physicians. He agrees [with] their treatment. He agrees that [Mr. McCain] has chronic upper back pain, organic brain syndrome, seizures, and his right rotator cuff tear. And he agreed with the management that his physicians were doing...and said that [Mr. McCain] should continue with them.

Dr. [John] Nyboer [Mr. McCain's treating rehabilitation physician] says [Mr. McCain] cannot work, and he has seizures that are now under control, but he cannot drive because...nobody knows if another one will come back.

[...]

Dr. [Paul] Dammers is his treating neuro-psych, and, as the Court stated, has treated [Mr. McCain] from the very beginning. He is the best evidence the Court recognizes on [Mr. McCain's] condition and abilities, and he states that [Mr. McCain] cannot return to work. His inappropriate behavior with others, especially with strangers having no filter, will not allow him to work, along with the fact that he could have a seizure at any time, and he has a cognitive disability.

Dr. [Joseph] Acosta[, the neurologist] who has been treating [Mr. McCain] for his seizures, described in his medical records emotional outburst[s], laughing and crying, and as I've already stated, joking with him about knives. He states that [Mr. McCain's] got a traumatic brain injury and has been treating him for seizures and that is working….But this man shouldn't drive, not only for that reason but because of the pain medication he is on and his cognitive deficiencies otherwise, his memory lapses and the need to be on his medication.

Dr. [Steven] Zuckerman[, the defendants' neurologist,] clearly found traumatic brain injury but, with regard to return-to-work, would defer to having an FCE performed, which the Court agrees with Dr. Smith [the IME] that it would not provide any information; that it's only going to provide functional capacity. And the Court already finds that physically [Mr. McCain] could do sedentary-duty wok except for the manual motor skills….But the Court is not finding him permanently and totally disable[d] on a physical level; on a mental level.

[…]

He cannot be trusted in a work environment, even a coddled work environment….And how would he get there? He cannot drive….[B]efore this happened, he was able to do everything….[T]here is no testimony that there was any disability of any kind, physical or mental, before the accident happened. He fell off a ladder 10 feet onto concrete and hit his head, as well as fracturing discs, ribs, his clavicle, he's got a right rotator cuff tear, all of that on top of the traumatic brain injury. And he's now got chronic upper back pain that requires that he have medication on a regular basis.

[…]

So for all these reasons, the Court finds that he is permanently and totally disabled and unemployable.

Following an extensive review of the record and exhibits in this matter, we are unable to say the WCJ erred in determining that based on Mr. McCain's physical, psychological, behavioral, and cognitive deficits, he was permanently and totally disabled and entitled to PTD benefits. The WCJ's ruling is reasonable and supported by the record. Thus, we affirm the portion of the judgment that found Mr. McCain permanently and totally disabled and awarded him PTD benefits retroactive to the date of trial and continuing until further order of the court.

### *Assignment of Error No. 2: Defendants' Objection of Prematurity*

In their second assignment of error, the defendants allege the WCJ erred in denying the defendants' exception of prematurity, or in the alternative, exceptions of no right and no cause of action, with regard to Mr. McCain's request for attendant care/personal care services (*i.e.*, a non-skilled sitter). The defendants contend that Mr. McCain's treating physician was required to obtain prior written authorization for attendant care/personal care services by submitting a Form LWC-WC-1010 to Lewis Companies' workers' compensation insurance carrier, LUBA. If LUBA denied the request, the defendants argue that the next step was for Mr. McCain's physician to seek relief with the OWC Medical Director through the filing of a Form LWC-WC-1009. Once the Medical Director made a decision regarding the Form LWC-WC-1009, if Mr. McCain felt aggrieved by the Medical Director's decision, he could file suit with the OWC by filing a Form LWC-WC-1008. The defendants aver that because Mr. McCain failed to obtain prior written authorization for attendant care/personal care services and instead filed a Form LWC-WC-1008 prior to filing Forms LWC-WC-1010 and 1009, he failed to comply with the OWC Medical Treatment Guidelines. Thus, his suit is premature, and he failed to state a cause of action and had no right of action against the defendants under the Workers' Compensation Act.

Mr. McCain's main argument regarding his entitlement to attendant care/personal care services without first complying with the OWC Medical Treatment Guidelines is that his request for a non-skilled sitter is a "nonmedical treatment." Therefore, according to Mr. McCain, the request does not fall within the scope of the OWC Medical Treatment Guidelines and is not required to be submitted to the OWC Medical Director if denied by a carrier, prior to filing a disputed claim for compensation.

Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception raising the objection of prematurity. The dilatory exception is designed to retard the progress of the action rather than defeat it. See La. C.C.P. art. 923. The objection of prematurity raises the issue of whether the judicial cause of action has yet come into existence because some prerequisite condition has not been fulfilled. The viability of the exception is determined by the facts existing at the time the lawsuit is filed. Stated differently, the dilatory exception raising the objection of prematurity questions whether the cause of action has matured to the point where it is ripe for judicial determination. **Willis v. Frozen Water, Inc.**, 2015-0900 (La. App. 1st Cir. 12/23/15), 2015 WL 9466625, at *2 (unpublished), writ denied, 2016-0146 (La. 3/14/16), 189 So. 3d 1069.

Workers' Compensation is designed to provide indemnity benefits (*e.g.*, wage and disability benefits) and medical care benefits for workers who sustain injuries or illnesses arising out of and in the course and scope of employment. See LAC 40:I.2717(A).[7] Under the Louisiana Workers' Compensation Act, an employer has a statutory duty to furnish all necessary treatment caused by work-related injury. See La. R.S. 23:1203; **Dangerfield v. Hunt Forest Prod., Inc.**,

---

[7] Louisiana Administrative Code Title 40, Part I, Subpart 2, Section 2717(A) provides that "[w]orkers' Compensation is designed to provide indemnity and medical care benefits for workers who sustain injuries or illnesses arising out of and in the course and scope of employment. The following instructions give some general guidelines for medical review of workers' compensation claims."

2010-1324 (La. App. 1st Cir. 3/25/11), 63 So. 3d 214, 218, writ denied, 2011-0814 (La. 6/3/11), 63 So. 3d 1019. Louisiana Revised Statutes 23:1203(A) provides, in pertinent part:

> In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal....

Louisiana Revised Statutes 23:1203.1(I) provides, in pertinent part:

> After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule.

Furthermore, La. R.S. 23:1203.1(M) provides:

> (1) With regard to all treatment not covered by the medical treatment schedule promulgated in accordance with this Section, all medical care, services, and treatment shall be in accordance with Subsection D of this Section.

> (2) Notwithstanding any other provision of this Chapter, all treatment not specified in the medical treatment schedule and not found in Subsection D of this Section shall be due by the employer when it is demonstrated to the medical director, in accordance with the principles of Subsection C of this Section, that a preponderance of the scientific medical evidence supports approval of the treatment that is not covered.

Under the authority of La. R.S. 23:1203.1(B), the OWC promulgated the Medical Treatment Guidelines with the purpose of assisting with the decision-making process regarding proposed medical treatment for injured workers. See LAC 40:I.2001-5399. Additionally, in accordance with La. R.S. 23:1291(B)(5), the OWC adopted the Utilization Review Procedures—which are found within the Medical Treatment Guidelines at LAC 40:I.2701-2719—to "establish procedures

12

and policies appropriate to the fulfillment of the powers, duties, and functions" of the OWC. See LAC 40:I.2701(A).

The procedure for obtaining care, services, or treatment under La. R.S. 23:1203.1 and the Medical Treatment Guidelines is as follows: (1) the medical provider submits to the employer/insurer a request for authorization on Form LWC-WC-1010; (2) the employer/insurer then must notify the medical provider of its action on the request within five business days of receipt of the request; (3) if any dispute arises as to whether the recommended care, services, or treatment is in accordance with the guidelines, or whether a variance from the guidelines is reasonably required, any aggrieved party must file, within fifteen calendar days, an appeal with the OWC Medical Director or Associate Director on Form LWC-WC-1009; (4) the Medical Director/Associate Director must render a decision as soon as practicable, but in no event, not more than thirty calendar days from the date of filing; (5) after the decision by the Medical Director/Associate Medical Director, any party who disagrees with the decision may appeal by filing a Form LWC-WC-1008; (6) the decision by the Medical Director/Associate Medical Director may be overturned only when it is shown, by clear and convincing evidence, the decision was not in accordance with the provisions of La. R.S. 23:1203.1. See La. R.S. 23:1203.1(J)(1) and (K).

The Medical Treatment Guidelines at LAC 40:I.3507-3511 set forth the policies, procedures, and reimbursement schedule for requests for nursing, attendant care, or home health health services. Under LAC 40:I.3507(A)(1), "[a]ll nursing services and personal care services described herein, except those specifically noted, must have prior written authorization of the carrier/self-insured employer before reimbursement will be made." As set forth by LAC 40:I.3507(B), "[p]rior authorization requests will be approved, denied, or amended and approved by the carrier...". Under LAC 40:I.3509(A)(6):

13

Family members and other persons who are **not trained professional nursing personnel** may receive payment in the amount of the **current minimum wage** if the following requirements have been satisfied:

a. the attendant has received adequate instruction from the authorized treating provider regarding the services to be provided in the home;

b. the services provided must be beyond the scope of normal household duties and must be in the nature of services ordinarily rendered by trained professional personnel in hospitals or nursing homes; and

c. the medical evidence of record must be sufficient to identify the nature and approximate value of the services provided. [Emphasis added.]

Similarly, LAC 40:I.3511(A) sets forth the maximum allowable reimbursement for nursing/attendant care/home healthcare services as: the least of the provider's usual and customary fee; a pre-negotiated amount between the provider and carrier; or the maximum allowable amounts established by the schedule. The following rates are established in the schedule: (1) registered nurse—$44.00 per hour; (2) licensed practical nurse—$31.00 per hour; (3) nurses' aide—$11.00 per hour; (4) attendant—minimum wage; and (5) nonprofessional family member—minimum wage. LAC 40:I.3511(C).

While attendant care/personal care services in the form of a non-skilled sitter may be classified as "nonmedical treatment" as listed in La. R.S. 23:1203(A), such "nonmedical treatment" due "shall mean … treatment in accordance with the medical treatment schedule" according to La. R.S. 23:1203.1(I). Thus, attendant care/personal care services is "treatment in accordance with the medical treatment schedule," even though it may be classified as "nonmedical treatment" under La. R.S. 23:1203(A). Therefore, attendant care/personal care services is a "medical care benefit" under the Workers' Compensation Act. See La. R.S. 23:1203.1(I), and LAC 40:I.2717(A).

14

Furthermore, attendant care/personal care services is specifically provided for in the Medical Treatment Guidelines at LAC 40:I.3507-3511. Even if attendant care/personal care services were not covered by the Medical Treatment Guidelines, La. R.S. 23:1203.1(M)(2) requires that such a request be presented to the OWC Medical Director.

Based on the foregoing, it is clear that Mr. McCain's request for attendant care/personal care services in the form of a non-skilled sitter must comply with the Medical Treatment Guidelines. Thus, Mr. McCain is required to comply with the procedures set forth in the Medical Treatment Guidelines and La. R.S. 23:1203.1: obtain prior authorization for attendant care/personal care services from LUBA via a Form LWC-WC-1010; if denied, seek relief with the OWC Medical Director by filing a Form LWC-WC-1009; after the Medical Director's determination, institute a suit in the OWC by filing a Form LWC-WC-1008 if aggrieved by the decision.

The record demonstrates that after Mr. McCain filed his Form LWC-WC-1008 on May 18, 2017, his medical provider thereafter filed a Form LWC-WC-1010, seeking authorization for the non-skilled sitter from LUBA. LUBA denied the request on July 14, 2018, pending completion of the state IME. No further action was taken by Mr. McCain or his medical provider regarding the request for attendant care/personal care services in the form of a non-skilled sitter.

Because Mr. McCain did not comply with the procedure set forth in the Medical Treatment Guidelines and La. R.S. 23:1203.1, his disputed claim for compensation was prematurely filed. Therefore, we must reverse the portion of the WCJ's February 8, 2018 judgment denying the defendants' exception of prematurity, and vacate the portion of the WCJ's September 18, 2018 judgment granting Mr. McCain's request for attendant care/personal care services in the form

15

of a non-skilled sitter.[8] <u>See, e.g.</u>, **Dow v. Chalmette Rest., Ltd.**, 2015-0336 (La. App. 4th Cir. 5/18/16), 193 So. 3d 1222, 1231.

*Assignment of Error No. 4: Exclusion of Deposition Testimony*

In their fourth assignment of error, the defendants allege the WCJ abused her discretion in excluding the deposition testimony of Dr. Steven Zuckerman (defendants' neurologist) and Dr. Megan Ciotta (defendants' neuropsychologist). They argue that the WCJ announced that any depositions taken after the discovery cut-off date of June 4, 2018 would not be admitted into evidence. The defendants submitted both depositions one week prior to trial, and the defendants proffered both depositions at trial.

Louisiana Code of Civil Procedure article 1631(A) provides that the "court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." Additionally, the trial court has much discretion under La. C.C.P. art. 1450 in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed on review in the absence of an abuse of that discretion. **ABS Servs., Inc. v. James Constr. Grp., L.L.C.**, 2016-0705 (La. App. 1st Cir. 12/21/18), 269 So. 3d 723, 737 (en banc), <u>writ denied</u>, 2019-0473 (La. 6/17/19), 273 So. 3d 1212. A review of the record does not support a finding that the WCJ abused her discretion in excluding the depositions. Accordingly, this assignment of error has no merit.

**DECREE**

Based on the foregoing, the portion of the September 18, 2018 final judgment of the Office of Worker's Compensation awarding the claimant, Terry

---

[8] Accordingly, we pretermit discussion of the defendants' third assignment of error on appeal, that the WCJ erred in granting Mr. McCain's request for a non-skilled sitter for up to ten hours per day, five days per week, to be paid $10.00 per hour.

16

McCain, non-skilled personal care attendant services for up to ten hours a day, five days a week, is vacated; the judgment is otherwise affirmed.

The portion of the February 8, 2018 interlocutory judgment of the Office of Worker's Compensation overruling the dilatory exception raising the objection of prematurity filed by the defendants, Lewis Companies, Inc. and LUBA Casualty Insurance Company, is hereby vacated; the judgment is otherwise affirmed.

This matter is remanded to the Office of Worker's Compensation for further proceedings consistent with this opinion. All costs of this appeal are assessed equally among the parties.

**JUDGMENTS VACATED IN PART, OTHERWISE AFFIRMED; REMANDED.**